541 S.E.2d 595

**GATEWAY COMMUNICATIONS, INC.,
a Corporation, Plaintiff Below,
Appellant,**

v.

**JOHN R. HESS, INC., a Corporation; Insurance Company of North America, a Corporation; and Stieglitz, Stieglitz, Tries, P.C., Architects/Planners, a Corporation, Defendants Below,**

**Insurance Company of North America,
a Corporation, Defendant Below,
Appellee.**

No. 27778.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 4, 2000.

Decided Nov. 6, 2000.

Dissenting Opinion of Justice
Starcher Jan. 11, 2001.

C. Robert Schaub, Schaub Law Offices, L.C., Huntington, for Plaintiff Below, Appellant.

Randall L. Trautwein, Lamp, O'Dell, Bartram, Levy & Trautwein, Huntington, and Jarrell D. Wright, Eckert Seamans Cherin & Mellott, L.I., Pittsburgh, PA, for Defendant Below, Appellee.

MAYNARD, Chief Justice:

The appellant, Gateway Communications, Inc., appeals from the October 18, 1999 order of the Circuit Court of Cabell County which dismissed the appellant's action against the appellee, Insurance Company of North America, on the ground that the action was barred by the time limitation contained in the performance bond on which the action was brought.

## I.

### FACTS

The appellant, Gateway Communications, Inc., (hereinafter "Gateway" or "appellant") owns and operates WOWK–TV, a commercial television broadcast station. In 1983, the appellant contracted with John R. Hess, Inc. (hereinafter "Hess"), a Pennsylvania corporation, for the construction of a new broadcast facility in Huntington, West Virginia. The facility was constructed in accordance with plans prepared by Stieglitz, Stieglitz, Tries, P.C., Architects/Planners (hereinafter "Stieglitz"). Hess executed a performance bond with the appellee, Insurance Company of North America (hereinafter "INA" or "appellee"), a Pennsylvania corporation, whereby INA became surety for Hess's completion of the contract. The performance bond pro-

vides that "[a]ny suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." The construction of the new broadcast facility was completed in 1985, and Hess was paid all amounts owed to it by the appellant.

On April 10, 1990, the appellant filed an action in the Circuit Court of Cabell County against Hess, Stieglitz, and INA, in which it alleged damage to the facility as a result of water leakage which was discovered in 1989. According to the appellant, the water leakage was caused by Hess's failure to construct underground drainage facilities in accordance with the contract. In its complaint, the appellant claimed breach of contract, breach of express and implied warranties, and negligence against Hess, and breach of contract against Stieglitz. In addition, the appellant sought a declaratory judgement as to the duties owed to it by INA, as surety, under the performance bond.[1]

Stieglitz eventually reached a settlement with the appellant and was dismissed from the action. In October 1991, during the pendency of the proceedings, Hess filed a petition for Chapter 7 bankruptcy which automatically stayed the appellant's action against it.[2] In March 1997, INA moved to dismiss the appellant's action on the ground that it was untimely under the express provisions of the performance bond. The circuit court agreed and by order of October 18, 1999 dismissed the appellant's complaint. The appellant challenges this dismissal.

## II.

### STANDARD OF REVIEW

This case was dismissed by the circuit court during the pleading stage because, in its view, the appellant's action was untimely. We have said that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,*

---

1. Also, the appellant sought a declaration of the duties of Hess and INA arising from an indemnity agreement executed by the parties. The indemnity agreement is not relevant to the issue before us.

2. *See* 11 U.S.C. § 362 (1994). It appears from the record that Hess was dissolved in 1993 and did not again participate in the underlying action.

194 W.Va. 770, 775, 461 S.E.2d 516, 521 (1995) (citation omitted). With this standard as our guide we now consider the issue before us.

### III.

### DISCUSSION

■ The appellant asserts that the time limitation for bringing an action contained in the performance bond is voided by the unambiguous language of W.Va.Code § 33–6–14 (1957)[3] which states in pertinent part:

> No policy delivered or issued for delivery in West Virginia and covering a subject of insurance resident, located, or to be performed in West Virginia, shall contain any condition, stipulation or agreement ... limiting the time within which an action may be brought to a period of less than two years from the time the cause of action accrues.... Any such condition, stipulation or agreement shall be void[.]

The appellant reasons that its cause of action accrued in 1989 when it discovered the defect in the construction of the facility. Accordingly, the performance bond provision limiting the bringing of the action to within two years from the date of final payment under the contract is void.

The appellee responds that according to W.Va.Code § 55–2–6a (1983),[4] an action, such as the instant one, to recover damages for deficiencies in construction and improvements to real property accrues when the real property is occupied or accepted by its owner, whichever occurs first. Because the appellant's acceptance of the new facility occurred on June 7, 1985, upon final payment, the appellant's action accrued at that time

and had to be brought no later than June 7, 1987. Therefore, avers the appellant, the time limitation in the performance bond is entirely consistent with W.Va.Code § 33–6–14. The appellant also contends that this Court has declined to extend the discovery rule to actions brought under W.Va.Code § 55–2–6a. *Citing Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992) and *Shirkey v. Mackey*, 184 W.Va. 157, 399 S.E.2d 868 (1990).

The sole issue in this case is whether the performance bond's limitation period for bringing an action to within two years from the due date of the final payment of the construction contract is void under W.Va. Code § 33–6–14 which says that an insurance policy issued in this State shall not limit the time for bringing an action to less than two years from the time the cause of action accrues. In order to resolve this issue, it is necessary to determine when the causes of action brought under the bond accrued. If any of these causes of action accrued later than the due date of the final payment of the construction contract, the bond's limitation period is void as it relates to that specific cause of action.

■ To determine what actions were brought under the performance bond, and when those actions accrued, we look to the actions the appellant brought against Hess arising from Hess's construction of the broadcast facility. As surety under the performance bond executed by INA and Hess, INA generally shares Hess's liability for any default under the construction contract. This is because the performance bond is a contract of suretyship and "[i]n a contract of suretyship the obligation of the principal and

---

**3.** The parties do not dispute the applicability of W.Va.Code § 33–6–14 to the performance bond at issue. According to W.Va.Code § 33–1–10(f)(2) (1986), surety insurance, which is covered by Chapter 33 of the Code, includes "[i]nsurance guaranteeing the performance of contracts, other than insurance policies, and guaranteeing and executing bonds, undertakings, and contracts of suretyship[.]"

**4.** W.Va.Code § 55–2–6a (1983) states, in part:

> No action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages

for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property, or, to recover damages for any injury to real or personal property[] ... may be brought more than ten years after the performance or furnishing of such services or construction[] .... The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of real property, whichever occurs first.

his surety is original, primary, and direct, and the surety is liable for the debt, default, or miscarriage of his principal." Syllabus Point 3, in part, *U.S. Fidelity and Guar. Co. v. Hathaway*, 183 W.Va. 165, 394 S.E.2d 764 (1990). We have recognized that "[a]s a general rule, the liability of the surety is coextensive with that of the principal." *State ex rel. Mayle v. Aetna Casualty & Surety Co.*, 152 W.Va. 683, 687, 166 S.E.2d 133, 136 (1969) (citations omitted). It must be remembered, however, that "[t]he liability of a surety is a legal as distinguished from a moral one. His obligation arises out of positive contract, and the contract ... generally measures the extent of [the surety's] liability." 74 Am.Jur.2d *Suretyship*, § 24, p. 27 (1974) (footnotes omitted). Accordingly, INA's liability as surety is limited by the obligations it undertook in the performance bond. We now proceed to examine the causes of action that the appellant brought against Hess, the accrual dates of the causes of action, and the potential liability of INA, as Hess's surety, under the performance bond.

▇▇▇ In the first two counts of its complaint, the appellant alleges breach of contract and breach of express and implied warranties against Hess. "[T]he statute of limitations begins to run [and these contract actions accrue] when the breach of the contract occurs or when the act breaching the contract becomes known." *McKenzie v. Cherry River Coal & Coke Co.*, 195 W.Va. 742, 749, 466 S.E.2d 810, 817 (1995). It has also been said that "a right of action upon a contract does not accrue and the statute of limitations does not begin to run until the agreement is to be performed or payment becomes due." 51 Am Jur 2d, *Limitation of Actions*, § 160, p. 555 (2000) (footnote omitted). "Generally, the statute of limitations begins to run, when a construction contract is involved, when the work is completed[.]"

54 C.J.S., *Limitations Of Actions*, § 131, p. 175 (1987) (footnote omitted).

▇▇▇ Applying these rules to the instant facts, we conclude that the appellant's contract actions against Hess accrued either in 1984 when the work was completed[5] or in 1985[6] when the appellant made its final payment on the construction project. Although the appellant alleges that it did not discover the breach of contract until 1989, this Court has not expressly held that the discovery rule tolls the running of limitation periods in actions arising from breaches of construction contracts.[7] INA would obviously be liable, under the performance bond, for Hess's breach of the construction contract. However, the performance bond limits the institution of an action under the bond to within two years from the date on which final payment under the contract fell due which, we have determined, is also the last date on which the appellant's contract action could have accrued. Therefore, the performance bond does not limit the time within which an action may be brought to a period of *less than* two years from the time the cause of action accrued in violation of W.Va.Code § 33–6–14. Accordingly, the circuit court did not err in dismissing the appellant's contract actions on the performance bond as untimely.

▇▇▇ In count three of its complaint, the appellant alleged that "Hess negligently performed its acts of duty and obligation in the construction of the ... project," which this Court construes as an action in tort. In Syllabus Point 4, in part, of *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988) we held that "[a] builder is under a common law duty to exercise reasonable care and skill in the construction of a building[.]" Therefore, we believe that the appellant could properly bring a tort action against Hess for negligent construction. The next question is whether the appellant can hold INA, as surety under

---

**5.** The appellant states in its brief that a certificate of substantial completion was issued dated September 24, 1984.

**6.** The appellee states in its brief that the appellant made full and final payment to Hess on or before June 7, 1985.

**7.** Some courts have applied the discovery rule to breach of construction contract cases while other courts have expressly declined to do so. *See* Sonja Larsen, J.D., *Modern Status Of The Application Of "Discovery Rule" To Postpone Running of Limitations Against Actions Relating To Breach Of Building And Construction Contracts*, 33 A.L.R.5th 1 (1995).

the performance bond, liable for Hess's alleged negligent construction.

As noted above, INA's liability as Hess's surety arises out of the performance bond and is limited by the provisions of that instrument. Further, this Court has recognized that the purpose of a performance bond is to guarantee that the contractor will perform the construction contract. *See Middle–West Concrete v. General Ins. Co.*, 165 W.Va. 280, 283 n. 2, 267 S.E.2d 742, 745 n. 2 (1980) ("A performance bond guarantees that the contractor will perform the contract and usually provides that if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond"). Conversely, the purpose of a performance bond is not to insure against the negligent acts of the contractor unless the performance bond so provides.

The performance bond at issue is titled "The American Institute Of Architects Performance Bond" (AIA Document A311). Under the terms of the bond, Hess and INA "are held and firmly bound" unto the appellant, as obligee, in the amount of $1,899,000 "for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally[.]" The construction contract between the appellant and Hess is by reference made a part of the performance bond. The bond further provides:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.
>
> The Surety hereby waives notice of any alteration or extension of time made by the Owner.
>
> Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly
>
> 1) Complete the Contract in accordance with its terms and conditions, or
>
> 2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.
>
> Any suit under this bond must be initiated before the expiration of two (2) years from the date on which final payment under the Contract falls due.
>
> No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or successors of the Owner.

By the plain terms of the bond, INA's obligation as surety commences only when the contractor is "in default under the Contract." The words "default under the Contract" clearly limit INA's liability to breaches of the construction contract committed by Hess, and not to Hess's tortious conduct. To hold that INA is liable for Hess's negligent acts in the construction of the broadcast facility would transform INA into Hess's liability insurer, a result that clearly is not contemplated in the terms of the performance bond. Therefore, we conclude that INA's obligation as Hess's surety under the performance bond does not extend to negligent acts committed by Hess in its performance of the construction contract.

We also believe that this conclusion does not reach an inequitable result in the present

case. When the appellant contracted with Hess for the construction of its new facility, it demanded that Hess execute a performance bond to guarantee the performance of the contract. According to INA, the appellant specifically requested the AIA performance bond. Further, the appellant received a copy of the performance bond and was aware that INA guaranteed Hess's completion of the contract, and that any suit brought under the performance bond must be brought within two years from the final payment on the contract. The appellant cannot now complain about the provisions of the performance bond when it was aware of these provisions from the beginning.

In summary, we have decided that any action brought by the appellant against INA under the performance bond is limited to a contract action. W.Va.Code § 33–6–14 says that an insurance policy shall not limit the time for bringing an action to less than two years from the time the cause of action accrues. The appellant's contract actions against Hess, and INA as Hess's surety, accrued either in 1984 when the work was completed or in 1985 when the appellant made its final payment on the construction project. Therefore, the performance bond does not impermissibly limit the time within which the appellant can bring an action to less than two years from the date the cause of action accrues because the date on which final payment under the contract fell due is also the last date on which the appellant's contract action could have accrued for the purpose of W.Va.Code § 33–6–14. Because the appellant did not bring its contract action under the bond until 1990, approximately five years from the date on which final payment under the construction contract fell due, and its cause of action accrued, the appellant's contract action against INA is untimely.[8]

8. INA argues that the appellant's action is foreclosed by W.Va.Code § 55–2–6a which states that an action to recover for defective construction accrues when the real property is occupied or accepted by the owner. INA's reliance on W.Va. Code § 55–2–6a is misplaced. In Syllabus Point 2 of *Gibson v. W.Va. Dept. of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991), we characterized W.Va.Code § 55–2–6a as a statute of repose as distinguished from a statute of limitation. "A statute of limitations ordinarily begins to run on the date of the injury; whereas, under a statute of repose, a cause of action is foreclosed after a stated time period regardless of when the injury occurred." Syllabus Point 2, *id.* Further, in the syllabus of *Shirkey v. Mackey*, 184 W.Va. 157, 399 S.E.2d 868 (1990), we held that "West Virginia Code § 55–2–6a (1983) sets an arbitrary time period after which no actions, whether contract or tort, may be initiated against architects and builders. Pre-existing statutes of limitation for both contract and tort actions continue to operate within this outside limit."

## III.

## CONCLUSION

For the foregoing reasons, the final order of the circuit court dismissing the appellant's action against INA, as Hess's surety, as untimely is affirmed.

Affirmed.

Justice STARCHER dissents and files dissenting opinion in which Justice McGRAW joins.

STARCHER, Justice, dissenting.

(Filed Jan. 11, 2001)

The majority opinion incorrectly holds that the "sole issue" in this case is whether appellee Insurance Company of North America could legally insert a 2–year limitation period into the performance bond purchased for the benefit of appellant Gateway Communications. There is another, more important question in this case, a question that is totally avoided by the majority opinion, which is this: when does a cause of action "accrue" against a performance bond so as to trigger the limitation period?

*W.Va.Code*, 33–6–14 [1957] prohibits any insurance contract from "limiting the time within which an action may be brought to a period of less than two years from the time the cause of action *accrues* . . . . " The purpose of such a limitation period "is to discourage fraud by preventing the assertion of claims after such lapse of time that it is difficult if not impossible to ascertain the truth. It is not the purpose of the statute to deprive a party of rights because of fraud." *Restatement of the Law of Suretyship and Guaranty, Third* (1995), § 66, comment (a). We have therefore held that a cause of action

accrues, and "the statute of limitations begins to run when the breach of contract occurs or *when the act breaching the contract becomes known.*" *McKenzie v. Cherry River Coal & Coke Co.*, 195 W.Va. 742, 749, 466 S.E.2d 810, 817 (1995) *(per curiam )* (emphasis added). In other words, the "discovery rule" applies to toll the deadline for filing lawsuits until the aggrieved party "discovers" the existence of a breach of the insurance contract's terms.

The *Restatement of the Law of Suretyship and Guaranty, Third* (1995) makes clear that the discovery rule should apply to insurance contracts such as the performance bond at issue in this case.[1] The *Restatement* reasons that if the "principal obligor" on a contract—the construction company in this case—fails to perform and then hides that breach of the contract by making a "pretended performance," then the principle obligor continues to be responsible for the completion of the contract. The innocent "obligee" can continue to demand performance of the contract, and the principal obligor cannot take advantage of his pretended performance to rely upon the statute of limitation. If a "secondary obligor"—such as the performance bond company in the *instant case*—is guaranteeing the performance of the principal obligor, then the secondary obligor's responsibility persists as well.[2] The cause of action does not accrue, and the statute of limitation does not begin to run, until the innocent obligee discovers or reasonably should discover the facts giving rise to a cause of action against the principal obligor.

In this case, the construction company breached the contract in 1984 by failing to correctly install an underground drainage system for the appellant. In other words, the construction company pretended to perform the contract and concealed the fact that it never performed the contract. The appellant did not discover the facts giving rise to a cause of action for breach of contract until 1989.

Therefore, the instant contract cause of action did not accrue until 1989. *W.Va.Code,* 33–6–14 requires insurance contracts to cover any claim filed within 2 years of the accrual of the claim. The instant case was filed in April 1990.

I therefore believe that the performance bond at issue in this case—by requiring that any action against the bond be filed within 2 years of the last payment on the underlying contract—improperly limited the time for filing a claim to a period less than 2 years from when the cause of action accrued. The appellant's cause of action was timely filed within 2 years of the date the action was discovered and accrued. Consequently, the circuit court erred by enforcing the limitation period against the appellant.

1. Section 66 of the *Restatement of the Law of Surety and Guaranty, Third* (1995) states:

   § 66. Effect of Principal Obligor's Concealment of Default on Statute of Limitations With Respect to Secondary Obligation.

   When the principal obligor's concealment of facts giving rise to a cause of action against it under the terms of the underlying obligation prevents the running of the statute of limitations with respect to the underlying obligation until discovery of those facts, the statute does not begin to run with respect to a cause of action against the secondary obligor arising from those facts until the obligee discovers or reasonably should discover them.

2. Comment (a) to Section 66 states, in part:

   Where the principal obligor makes a pretended performance or conceals a default, it is easy to conclude that the principal obligor cannot take advantage of that act to obtain the benefit of the statute of limitations. Where the secondary obligor has participated in the fraud, the same result follows as to the running of the period of limitations as to the secondary obligor. Where, however, the secondary obligor is innocent, the equities of the situation do not provide a clear answer. If the principal obligor defaults and the default is concealed from the obligee, so far as the latter's knowledge is concerned there is no enforceable right against the secondary obligor. Thus, the failure of the obligee to pursue the secondary obligor is also innocent. Therefore, a choice must be made between two innocent persons, the obligee and the secondary obligor. The choice is made in favor of the obligee so long as it cannot reasonably be expected to discover the principal obligor's default. So long as the original duty of the principal obligor continues, the liability of the secondary obligor persists. Moreover, in many cases the relations of principal obligor and secondary obligor are such that the secondary obligor is in a better position than the obligee to know the facts regarding the principal obligor's performance.

Accordingly, I respectfully dissent. I am authorized to state that Justice McGRAW joins in this dissent.