550 S.E.2d 93

**David M. HARRIS, M.D., Plaintiff Below, Appellant,**

v.

**Hamilton JONES and Mutual Insurance Agency, Inc., a West Virginia corporation, Defendants Below, Appellees.**

No. 29008.

Supreme Court of Appeals of West Virginia.

Submitted June 12, 2001.

Decided June 28, 2001.

Dissenting Opinion of Justice Maynard July 2, 2001.

Kathryn Reed Bayless, Esq., Bayless & McFadden, Princeton, West Virginia, Attorney for Appellant.

Charles M. Love, III, Esq., Michael J. Halaiko, Esq., Kimberly R. Wilson, Esq., Bowles, Rice, McDavid, Graff & Love, Charleston, Norris Kantor, Esq., Katz, Kantor & Perkins, Bluefield, West Virginia, Attorneys for Appellees.

PER CURIAM:

This is an appeal from the Circuit Court of Mercer County by a practicing physician of an order granting summary judgment in fa-

vor of an insurance agency and an individual insurance agent. The physician alleged that the insurance agent sold him a policy that failed to fully cover the physician in a medical malpractice lawsuit settlement. The circuit court concluded that the physician's action was barred by the statutes of limitation for both tort and contract actions.

After carefully examining the record, we conclude that questions of material fact remain. Accordingly, as set forth below, we reverse the circuit court's summary judgment order.

I.

The appellant, Dr. David Harris ("Dr.Harris"), is a physician who practices plastic and reconstructive surgery in both Bluefield, Virginia, and Bluefield, West Virginia. In late 1989 or early 1990, Dr. Harris was deciding whether to renew his existing malpractice insurance policy, or to purchase a different policy from insurance agent Hamilton Jones ("Mr.Jones"), one of the appellees in the instant case.

Mr. Jones is an agent of the appellee, Mutual Insurance Agency, Inc. ("MIA"). Mr. Jones offered Dr. Harris a medical malpractice liability insurance policy to be issued by Physicians National Risk Retention Group ("PNRRG"). Mr. Jones' chief selling point was the substantially lower price of the PNRRG policy. Mr. Jones told Dr. Harris that the PNRRG policy was "sound."

However, according to Dr. Harris, Mr. Jones did not tell him that PNRRG was not "backed up" by the West Virginia Insurance Guaranty Association ("Guaranty Fund"), a statutorily-created fund that provides a degree of backup coverage when an insurance company cannot meet its obligations. *See* *W.Va.Code*, 33–26–1 to –19 [1970]. Dr. Harris further contends that the appellees failed to comply with *W.Va.Code*, 33–32–9 [1987][1]

1. *W.Va.Code*, 33–32–9 [1987] provided that:
    Any policy issued by a risk retention group shall contain in ten-point type on the front page and the declaration page, the following notice:
**NOTICE**

This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

by failing to include on the insurance application form and on the declaration page notice that the policy being purchased was not "subject to the insurance laws or protected by the guaranty funds."

Dr. Harris purchased the PNRRG policy in or around February 1990.

On June 22, 1990, Dr. Harris and other health care providers performed surgery on a patient to remove a blockage from her esophagus. The patient experienced complications from the surgery. Subsequently, the patient sued Dr. Harris and the other medical care providers who were involved in her care, claiming medical malpractice.

In November 1991, during the course of the malpractice litigation, PNRRG was placed into receivership in Louisiana. Dr. Harris questioned Mr. Jones about the PNRRG receivership and was allegedly told by Mr. Jones "not to worry;" that PNRRG "had plenty of money;" that PNRRG's being placed into receivership was "a political problem;" and that it was just a case of "lawyers ... gouging each other." PNRRG did provide Dr. Harris with a legal defense for the medical malpractice case.

Mr. Jones allegedly also assured Dr. Harris that PNRRG, even though in receivership, would pay between 90 and 95 percent of any malpractice judgment or any settlement that was reached in the pending malpractice litigation.

In May 1993, relying on Mr. Jones' representations, Dr. Harris entered into a settlement agreement in the medical malpractice case for $100,000 plus interest. As part of the settlement, Dr. Harris pledged to personally pay any deficiency between the agreed-upon settlement and any payment made toward the settlement by PNRRG.

In October 1995, the medical malpractice plaintiff received a payment of approximately $28,000 from PNRRG's receivership. Whether PNRRG would be able to pay more than the $28,000 remained questionable. A review of the record indicates that at the time this case was appealed, PNRRG's liqui-

dation was yet to be finalized, PNRRG had not paid any additional monies toward the settlement of the malpractice claim, nor had Dr. Harris personally paid any money toward the settlement.

Dr. Harris claims that it was in the summer of 1997 that he first learned: (1) that the PNRRG receivership proceeds would be substantially inadequate with respect to the malpractice settlement; and (2) that any balance owed after PNRRG made its final payment on the settlement agreement would not be paid by the Guaranty Fund. Specifically, Dr. Harris alleges that it was in the summer of 1997, after he began to hear rumors from other doctors that the Guaranty Fund did not cover certain medical malpractice claims, that he consulted an attorney who told him that PNRRG's policy was not covered by the Guaranty Fund.

In November 1998, Dr. Harris instituted the instant action in the Circuit Court of Mercer County against the appellees, claiming that Mr. Jones and MIA misled Dr. Harris and recommended and sold him a policy of insurance from a company that Mr. Jones and MIA knew, or should have known, was financially unsound. Dr. Harris further contended that the appellees negligently failed to inform Dr. Harris that the policy would not be protected by West Virginia's Guaranty Fund, failed to comply with specific statutory requirements relating to notice that Guaranty Fund protection was not available, and that he suffered severe emotional distress as a result of the failure of his professional liability policy to protect him in the event of a malpractice claim against him.

Mr. Jones and MIA filed motions for summary judgment, asserting that Dr. Harris' actions were barred by statutes of limitation.

The circuit court granted the appellees' motions for summary judgment, finding that Dr. Harris' action was untimely. Specifically, the circuit court found that Dr. Harris' former insurance agent had informed Dr. Harris in 1990 regarding risks associated with PNRRG. Furthermore, the circuit

This statute was revised by the Legislature in 1992; however, no changes were made that affect this appeal.

court found that Dr. Harris's PNRRG policy specifically stated that "STATE INSURANCE INSOLVENCY GUARANTY FUNDS ARE NOT AVAILABLE FOR THE RISK RETENTION GROUP." Lastly, the trial court found that on June 29, 1993, Dr. Harris received a certified mail letter from PNRRG informing Dr. Harris that PNRRG did not belong to any guaranty fund.

In an order dated July 11, 2000, the circuit court granted summary judgment in favor of Jones and MIA concluding, as a matter of law, that Dr. Harris' claims were barred by the statutes of limitation for both tort and contract actions.[2] Dr. Harris appeals from this ruling.

## II.

■ In the instant appeal, the controlling question is whether the granting of summary judgment was appropriate. This Court reviews summary judgments under a *de novo* standard. We have consistently said that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ In Syllabus Point 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we stated the basic rule that:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

■ At the summary judgment stage, the benefit of the doubt is to be given to the nonmoving party. All inferences drawn are to be made in favor of the nonmoving party. Both this Court and the court below "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758.

■ "In assessing the factual record, we must grant the nonmoving party the benefit of all inferences, as '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]'" *Williams v. Precision Coil*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986). Additionally, we have concluded that

[t]he inferences to be drawn from the underlying affidavits, exhibits, answers to interrogatories, and depositions must be viewed in the light most favorable to the party opposing the motion.

On a motion for summary judgment, neither a trial nor appellate court can try issues of fact; a determination can only be made as to whether there are issues to be tried. To be specific, if there is any evidence in the record from any source from which a reasonable inference can be drawn in favor of the nonmoving party, summary judgment is improper.

*Hanlon v. Chambers*, 195 W.Va. 99, 105, 464 S.E.2d 741, 747 (1995).

■ The standard for summary judgment is high. Summary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915

---

**2.** The statute of limitation for tort actions, *W.Va. Code*, 55–2–12 [1959], states that:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Similarly, the statute of limitation for implied contract actions, *W.Va.Code*, 55–2–6 [1923] states, in pertinent part, that:

Every action to recover money, which is founded upon ... any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: ... if it be upon any other contract, express or implied, within five years[.]

(4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

In *Painter v. Peavy*, this Court held that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syllabus Point 3, *Painter v. Peavy, supra.*

Dr. Harris' principal contention is that his claims should not be barred as untimely because any applicable periods of limitation did not begin to run until the summer of 1997 when Dr. Harris came to understand that neither PNRRG nor the Guaranty Fund would cover the medical malpractice settlement.[3] Alternatively, Dr. Harris contends that any untimeliness in his filing was a result of the appellees' conduct, thereby estopping the appellees from asserting Dr. Harris' alleged untimeliness as a defense. Dr. Harris' claims sound in both tort and contract.

■ Ordinarily, the applicable statute of limitation begins to run when the actionable conduct occurs. The tolling of the statute of limitations under "[t]he 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition of its application." Syllabus Point 2, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). We have further stated that "under the 'discovery rule,' the statute of limitation is tolled until a claimant knows or by reasonable diligence should know of his claim." *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 711, 487 S.E.2d 901, 906 (1997) *citing* Syllabus Point 1, *Cart v. Marcum, supra.*

■ The purpose of a "discovery rule" is the recognition of the inherent unfairness of barring a claim when a party's cause of action could not have been recognized until after the ordinarily applicable period of limitation. Accordingly,

... under the discovery rule the statute of limitation begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syllabus Point 4, in part, *Gaither.*

With regard to contract actions, this Court has stated that "the statute of limitations begins to run when the breach of the contract occurs or when the act breaching the contract becomes known." *McKenzie v. Cherry River Coal & Coke Co.*, 195 W.Va. 742, 749, 466 S.E.2d 810, 817 (1995) (*per curiam*). *See also Gateway Communications, Inc. v. John R. Hess, Inc.*, 208 W.Va. 505, 509, 541 S.E.2d 595, 599 (2000). The equitable principles of the *Gaither* analysis are, therefore, applicable to the plaintiff's tort and contract claims in the instant case.

■ Dr. Harris has appealed the granting of summary judgment against him and in favor of the appellees, insurance agent Jones, and insurance agency MIA. It appears to the Court that reasonable persons could reach different conclusions on the issue of the timeliness of Dr. Harris' suit against the appellees. While a fact finder could conclude that Dr. Harris had notice prior to the summer of 1997 that the PNRRG policy was not protected by the Guaranty Fund, a fact finder might also conclude that Dr. Harris, because of the appellees' continued assurances of PNRRG's soundness, did not have reason to appreciate the significance of the lack of Guaranty Fund coverage until the summer of 1997.[4] Or, a fact finder could conclude that Dr. Harris had indeed "slept on his rights" and that his action was untimely.

It is for the jury to decide when Dr. Harris recognized, or through reasonable diligence

---

3. Dr. Harris also argues that any applicable period of limitation still has not begun to run because Dr. Harris has not yet suffered any damages; and that his lawsuit was therefore merely a "prophylactic" filing. This argument was not raised before the circuit court. For purposes of this decision, we will assume that Dr. Harris' causes of action sufficiently accrued at a time in the past so as to implicate the statute of limitation issue.

4. The parties agree that the applicable periods of limitation for Dr. Harris' claims are, at the least, 2 years, which would make his 1998 filing timely if the period of limitation began running in the summer of 1997.

should have appreciated, that the appellees had sold him an inadequate insurance policy. "In a great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." *Gaither*, 199 W.Va. at 714–15, 487 S.E.2d at 909–910.

Therefore, because there are remaining issues of material fact to be determined, we conclude that the trial court erred in granting summary judgment for the appellees.

### III.

The July 11, 2000 order of the Circuit Court of Mercer County granting summary judgment for the appellees is reversed and this case is remanded for further proceedings in accordance with this opinion.

Reversed and Remanded.

MAYNARD, Justice, dissenting:

(Filed July 2, 2001)

I dissent because I do not believe that the discovery rule operates to toll the statute of limitations which governs Dr. Harris's tort causes of action.

The evidence indicates that Dr. Harris's PNRRG policy clearly provides that "State Insurance Insolvency Guaranty Funds Are Not Available For The Risk Retention Group." Presuming the misrepresentations alleged by Dr. Harris are true, he knew when he received the policy that he had unwittingly purchased a policy which was not guaranteed, that Hamilton Jones and Mr. Jones' employer were the parties who sold him the policy, and that their failure to inform caused him to purchase the policy. Therefore, under syllabus point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), that is when the tort statute of limitations of two years began to run. Because Dr. Harris did not file his action until 1998, his action was untimely, and the circuit court properly granted summary judgment against him.

Dr. Harris also alleges that he was misled by being sold a policy of a company known to be unsound at the time of the purchase. It appears from the facts that PNRRG was placed in receivership in 1992 or 1993. Because Dr. Harris was being sued at this time, he obviously became aware soon thereafter of the financial condition of his malpractice insurer. Again, presuming that his allegations are true, Dr. Harris knew he was harmed by the fact that his malpractice insurer was financially incapable of satisfying a judgment against him, and that this was because the defendants misrepresented the financial condition of the insurer at the time of his purchase of the policy. Therefore, the statute of limitations began to run on this tort cause of action in 1993 so that the 1998 lawsuit was untimely and summary judgment was proper.

The majority concludes, however, that a rational trier of fact could find that Dr. Harris "did not have reason to appreciate the significance of the lack of Guaranty Fund coverage" until the summer of 1997. It is simply incredible that a person of Dr. Harris's intelligence who knew when he purchased the policy in 1990 that it was not guaranteed, did not come to "appreciate the significance" of this fact until seven years later. If this is in fact true, I certainly would not want Dr. Harris to by my doctor. To the contrary, the evidence shows that Dr. Harris knowingly bought a deficient insurance policy in order to save money, and when his bargain went sour he appealed to the legal system for help. Nevertheless, it simply is not the role of courts to save perfectly capable people from bad bargains.

Especially troubling is the majority's continued expansion of the discovery rule in order to disregard applicable statutes of limitations. As I have said many times, statutes of limitations serve important functions in our legal system. "The basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them." *Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 791, 144 S.E.2d 156, 161 (1965) (citations omitted). In *Cart v. Marcum*, 188 W.Va. 241, 245, 423 S.E.2d 644, 648 (1992), this Court explained:

by declaring the *existence* of a "discovery rule" we do not eviscerate the statute of limitations: the statute of limitations will apply unless the handicaps to discovery at the time of the injury are great and are largely the product of the *defendant's* conduct in concealing either the tort or the wrongdoer's identity.

This original purpose of the discovery rule, which was to protect innocent plaintiffs from wrongful acts of concealment by defendants, was abandoned in *Gaither*. In that case, the inquiry of whether the defendant concealed the tort or the wrongdoer's identity shifted to the question of what the plaintiff knew and when he or she knew it. As a result, the discovery rule was distorted beyond recognition in order to protect dilatory, apathetic, and willfully ignorant plaintiffs.

Now the majority of the Court distorts *Gaither*. Apparently, the dispositive issue is no longer what the plaintiff *knew* and when he *knew* it but, rather, when the plaintiff came to "appreciate the significance" of the tort. As a result, a plaintiff can *know* about a tort in 1990, but not come to "appreciate the significance" of the tort until 1997. Such reasoning eviscerates statutes of limitations. It is a small step from this case to doing away with statutes of limitations altogether, which, I believe, is what some members of this Court desire.

Because the circuit court properly applied the discovery rule, as stated in *Gaither*, to rule that Dr. Harris's tort actions were untimely as a matter of law, I would affirm the grant of summary judgment against Dr. Harris. Accordingly, I dissent.