# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael Sheliga,**
**Plaintiff Below, Petitioner**

**vs.) No. 19-0606** (Braxton County 118-C-33)

**Gassaway Public Library,**
**Debra Shaver, Keith Shaver,**
**Imogene Clutter, John Doe #1,**
**and John Doe #2,**
**Defendants Below, Respondents**

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Sheliga, by counsel Alan L. Pritt, appeals the June 5, 2019, order of the Circuit Court of Braxton County that granted the motion to dismiss filed by Respondents Gassaway Public Library, Debra Shaver, and Imogene Clutter (collectively "the library respondents"), and the motion for summary judgment filed by Respondent James Shaver[1] on petitioner's claims of "false reporting," assault, battery, and the tort of outrage following an incident that transpired at the Gassaway Public Library. The library respondents, by counsel Brent K. Kesner, Ernest G. Hentschel, II, and Shawn C. Gillispie, and Mr. Shaver, by counsel Daniel R. Grindo, filed responses in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 27, 2016, petitioner stopped at the Gassaway Public Library ("the Library") while traveling from Pennsylvania through the Town of Gassaway on his bicycle. When asked by one of the librarians, Debra Shaver, if he needed any help, petitioner replied that he did not. Petitioner proceeded to change his clothes in the Library's bathroom. According to petitioner, an unknown male, identified in petitioner's amended complaint as John Doe #1, collected items that petitioner left on a table in the Library and dumped them onto the sidewalk because Ms. Shaver "did not like his initial response to her question" about whether he needed any help. John Doe #1 then advised petitioner that he was a "'stranger' in their library and that he was required to tell the library staff

---

[1] Although, based upon petitioner's complaint, the style of this case identifies this respondent as "Keith" Shaver, the respondent's name is James Shaver.

1

what he intended to do in the library." Petitioner alleges that, as he began to walk towards John Doe #1 to reply to this remark, Respondent James Shaver "began assaulting and violently pushing [petitioner] out of the library and onto the street[]" and that another individual, identified in petitioner's amended complaint as John Doe #2, joined in the assault on petitioner. Petitioner advised that "he would be calling the police, to which they replied that they would call the police." Petitioner "packed up his bicycle, moved down the street, and waited for the police to arrive." According to petitioner, the police questioned him and, when he informed them that he wished "to fill out a complaint[,]" and requested "numerous times" to press charges against the Library employees, he was told that he should drop the matter and leave town or else he would be arrested. Petitioner eventually left town, but a warrant for his arrest was issued in the event he returned to the area.

Respondents claimed that petitioner was acting erratically and aggressively while in the Library and that, out of concern for the safety of those in the building, Ms. Shaver called the Town of Gassaway office and also her husband, Mr. Shaver, to assist her and Ms. Clutter, a fellow employee who was then 77 years old. In his statement to law enforcement upon their arrival at the Library following the incident, Mr. Shaver stated that he led petitioner out of the building by his elbow in response to his "aggressive behavior." Ms. Clutter and Ms. Shaver also reported to police that petitioner was acting erratically and that he was waving his hands at them. Ms. Shaver told police that petitioner was cursing and was agitated, and that he lunged at her husband, Mr. Shaver.

On August 10, 2016, petitioner returned to Braxton County and was pulled over by the West Virginia State Police for erratic driving. He was then charged in the Magistrate Court of Braxton County with trespass, assault, and disorderly conduct as a result of the prior incident at the Library. On February 22, 2017, petitioner, while represented by counsel, executed a general release in which he agreed to fully release the prosecuting attorney's office and the sheriff's department, "and all other persons, firms or corporations liable or who might be claimed to be liable, (collectively the "Releases") from any and all civil claims . . . of any kind or nature whatsoever that I now have or may hereafter have, against said Releases, by reason of any matter, cause or thing whatsoever, from all claims prior to the date of this instrument." On April 17, 2017, the case against petitioner was dismissed.

Petitioner filed his initial complaint on June 18, 2018, against the Library and the Braxton County Commission, alleging claims of assault, battery, defamation, a violation of civil rights, and the tort of outrage. On July 10, 2018, the Library filed its answer and served its First Set of Interrogatories, Request for Production of Documents, and Request for Admission.

On July 24, 2018, petitioner filed his amended complaint alleging the same claims as in the initial complaint as well as a claim of "false reporting" against the Library, Ms. Shaver, Ms. Clutter, Mr. Shaver, and unidentified defendants known as John Doe #1 and John Doe #2. The Braxton County Commission was no longer a named defendant.

On August 28, 2018, the Library filed a Motion to Deem Request for Admissions Admitted, pursuant to Rule 36 of the West Virginia Rules of Civil Procedure. *See Id.* (stating that "[t]he matter is admitted unless, within 30 days after service of the request, . . . the party to whom the

request is directed serves upon the party requesting the admission a written or objection addressed to the matter[.]").

Thereafter, as against the library respondents, all claims were subsequently voluntarily dismissed with the exception of the claim for "false reporting." As against Mr. Shaver, the defamation and violation of civil rights claims were voluntarily dismissed, while the assault, battery, tort of outrage, and "false reporting" claims remained.

On September 14, 2018, the library respondents filed a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and, on November 26, 2018, Mr. Shaver filed a motion for summary judgment under Rule 56. A hearing on the motions, as well as on the Library's previously filed motion to deem requests for admissions admitted, was conducted on December 10, 2018. By order entered June 5, 2019, the circuit court granted the motion to deem the requests for admissions admitted because petitioner failed to respond to them within thirty days as required by Rule 36. In so concluding, the circuit court found that petitioner admitted (1) that "he was asked by the librarian if he needed any help, and that he did not answer and acted erratically"[;] and (2) that "he got in the face of one of the librarians, that no employee of the Gassaway Public Library touched him, and that no Library employee dumped his belongings on the street."

Also in its June 5, 2019, order, the circuit court granted the motions to dismiss and for summary judgment on all of petitioner's claims. It is from this order that petitioner now appeals.

With regard to that portion of the circuit court's order granting Mr. Shaver's motion for summary judgment, we observe that, pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York,* 148 W. Va. 160, 133 S.E.2d 770 (1963). On appeal, this Court accords a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

Regarding that portion of the circuit court's order granting the library respondents' Rule 12(b)(6) motion to dismiss petitioner's amended complaint, our review is likewise de novo. *See* Syl. Pt. 1, *Albright v. White*, 202 W. Va. 292, 503 S.E.2d 860 (1998) ("'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*' Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995)"). Further, we have instructed that a circuit court should not dismiss a complaint where sufficient facts have been alleged that, if proven, would entitle the plaintiff to relief. "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Syl. Pt. 3, *Chapman v. Kane Transfer Co.,* 160 W. Va. 530, 236 S.E.2d 207 (1977) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The

purpose of a 12(b)(6) motion is to test the sufficiency of the complaint. "For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *John W. Lodge Distrib. Co. v. Texaco, Inc.,* 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978). We will review the circuit court's order using these standards.

First, we address petitioner's argument that the circuit court erred in granting Mr. Shaver's motion for summary judgment on the claim that Mr. Shaver committed the tort of outrage when, without provocation, he "violently push[ed]" petitioner out of the library "only because Petitioner stepped toward an unknown male to respond to the inflammatory remarks this individual made towards Petitioner." Petitioner argues that the circuit court erred in finding that no rational trier of fact could have found that Mr. Shaver's conduct was outrageous. We find no error.

The tort of outrage is also known as the "intentional or reckless infliction of emotional distress." *See Travis v. Alcon Labs., Inc.*, 202 W. Va. 369, 374, 504 S.E.2d 419, 424 (1998). This Court has stated that "'[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' Syllabus Point 6, *Harless v. First Nat. Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982)." *Travis*, 202 W. Va. at 371, 504 S.E.2d at 421, syl. pt. 2.

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Id.* at 371, 504 S.E.2d at 421, syl. pt. 3. Further,

> "[t]he first element of the cause of action is a showing by the plaintiff that the defendant's actions towards the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency. The defendant's conduct "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 383 (10th Cir.1988).

*Travis* at 375, 504 S.E.2d at 425. Finally,

> [i]n evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether

conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

*Id.* at 371, 504 S.E.2d at 421, syl. pt. 4.

The circuit court found that petitioner acted erratically when Ms. Shaver asked him if he needed any help; that "he got in the face of the one of the librarians"; that, based upon petitioner's own deposition testimony, he was "'pushed' to, and out of, the door of the library, but not beyond the threshold of the door"; and that Mr. Shaver did not "push him to the ground," "grab him[,]" or strike him with any object.[2] In its role as gatekeeper with respect to whether Mr. Shaver's conduct could reasonably be considered outrageous, the circuit court determined that it could not

> find that [Mr.] Shaver's conduct may reasonably be regarded as so extreme and outrageous as to exceed the bounds of decency. He received a phone call from his wife, Debra Shaver, regarding a Library patron who was acting erratically and making his wife nervous. In his statement to Trooper Schoolcraft, he stated that he had never before received a call of that nature from his wife, and therefore he believed it to be a serious matter. He stated to Trooper Schoolcraft that [petitioner] was acting in an agitated and aggressive manner, and in an attempt to assist his wife and her co-worker, Imogene Clutter, he took [petitioner] by the arm and directed [petitioner] to the exit.

The circuit court concluded that, based upon "the totality of the circumstances . . . [Mr.] Shaver's conduct was not so outrageous as to exceed the bounds of decency, and therefore a claim for Tort of Outrage cannot be sustained." We are mindful that, "[a]t the summary judgment stage, the benefit of the doubt is to be given to the nonmoving party[,]" and that "[b]oth this Court and the court below 'must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion.'" *Harris v. Jones*, 209 W. Va. 557, 561, 550 S.E.2d 93, 97 (2001) (quoting *Painter v. Peavy,* 192 W. Va. at, 192, 451 S.E.2d at 758). Viewing the evidence in the light most favorable to petitioner—and considering that petitioner's own deposition testimony regarding Mr. Shaver's conduct was not inconsistent with the police statements given by the individual respondents—we find that the circuit court did not err in concluding, as a matter of law, that Mr. Shaver's conduct could not reasonably be regarded as so extreme and outrageous as to constitute the tort of outrage.

We next address petitioner's assignments of error that the circuit court erred in resolving his claims for "false reporting" against all of the respondents before discovery had been fully conducted. He argues that this case is "fact intensive," and that his claim "hinged" on the written

---

[2] Given this testimony by petitioner, this Court questions the veracity of the contrary statement in petitioner's brief—which was made without citation to the appendix record—that "[t]he force used [by Mr. Shaver] was enough to push Petitioner to the ground more than once." This Court has reviewed the appendix record and finds no evidentiary support for such a statement.

police report and audio tapes of the police statements given by the individual respondents that he claims he had not received or knew existed at the time the circuit court entered its order.[3] Thus, with regard to Mr. Shaver's motion for summary judgment on petitioner's "false reporting" claim, petitioner argues that the motion was improvidently granted. With regard to the library respondents, petitioner argues that the amended complaint "put[] [them] on notice of the [false reporting] claim against them and adequately describes what facts the Petitioner plans to use to support that claim." Thus, he contends that the circuit court erred in granting the library respondents' motion to dismiss with regard to the "false reporting" claim.

We find no error. Petitioner's arguments are fundamentally flawed in that he has utterly failed to identify any supporting legal authority for a "false reporting" claim in the context of a civil action.[4] Not surprisingly, therefore, petitioner has failed to define or otherwise identify the elements of such a claim and to argue how respondents' alleged conduct constitutes "false reporting." Given these most basic deficiencies, we need not further discuss this assignment of error except to caution that "liberalization in the rules of pleading in civil cases does not justify a carelessly drafted or baseless pleading. . . . Simplicity and informality of pleading do not permit carelessness and sloth: the plaintiff's attorney must know every essential element of his cause of action and must state it in the complaint." *Sticklen v. Kittle*, 168 W. Va. 147, 164, 287 S.E.2d 148, 157-58 (1981). *See also Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986) ("The complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist.").

---

[3] Petitioner's claim that he did not receive the audio recordings of the individual respondents' police statements or the written police report is, at best, confusing, and, at worst, completely false. In his proposed Order Denying Defendants' Motion to Dismiss and Motion for Summary Judgment and Accompanying Findings of Fact and Conclusions of Law, petitioner stated that his "false reporting" "claim is not dismissed after reviewing the audio tapes provided in discovery and submitted by [sic] this [c]ourt[,]" and further, that

> [t]he recorded statements of Debra Shaver and Imogene Clutter can be proven of [sic] false reporting as they directly differ from the statement listed in the police report. The statements from both employees claim [petitioner] was lunging at James Shaver. The police report . . . state[s] that [petitioner] was lunging at Debra Shaver. There is a material issue of fact as to whether the women were telling the truth in their statements to the officer.

Petitioner's proposed order further stated that Mr. Shaver "gave a statement to police which contradicts statements in . . . the police report . . . . There is clearly a genuine issue of material fact as to the false swearing [sic] claim."

[4] We observe that "false reporting" does exist as an offense in the criminal context. *See* W. Va. Code § 61-6-20.

6

Additionally,

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, *State v. Myers,* 229 W. Va. 238, 728 S.E.2d 122 (2012) (internal quotations and citations omitted). Accordingly, we find no error in the circuit court's order that dismissed petitioner's "false reporting" claims against respondents.

Finally, we address petitioner's argument that the circuit court erred in granting Mr. Shaver's motion for summary judgment on his claims of assault and battery. In his response to Mr. Shaver's motion for summary judgment, petitioner argued simply that his medical records showed that "the pain started after a fight on 7/28/2016, the same date as the above-mentioned battery and assault. The records mention left hand pain, shooting pain in his arm and numbness in his left thumb from the altercation with [Mr. Shaver]."

In its summary judgment order, the circuit court found that petitioner "incurred an unspecified amount of medical bills as a result of being seen for an elbow injury[,]" and that the medical records petitioner produced indicated that "he was diagnosed with tennis elbow, a degenerative condition resulting from repetitive motion and not associated with the altercation" with Mr. Shaver. The circuit court further determined that "[n]o other injuries were claimed as a result of the alleged altercation[,]" and that petitioner failed to prove any "corroborating evidence as to any claimed injury or damages suffered as a result of the contact between [him] and [Mr.] Shaver. There is no genuine issue of fact regarding the lack of injury or damages sustained by [petitioner]." The circuit court thus concluded that summary judgment in favor of Mr. Shaver was appropriate on petitioner's claims of assault and battery.

On appeal, petitioner argues that discovery had not been fully conducted at the time the summary judgment order was entered, that the court "was not in possession of the Petitioner's full medical records[,]" and that the medical records that were before the court showed that petitioner received medical treatment for "the same elbow [Mr. Shaver] grabbed" in the altercation.[5]

---

[5] Petitioner also argues that, regardless of what the medical records showed, he was not required to show that he sustained "harmful damages" as a result of the assault and battery, but, rather, only that Mr. Shaver's alleged conduct was "harmful or offensive." *See Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D.W. Va. 2010), *aff'd sub nom. Hutchinson v. Lemmon*, 436 F. App'x 210 (4th Cir. 2011) ("'An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.' Restatement (Second) of Torts § 21 (1965), *cited with approval in W. Va. Fire & Cas. Co. v. Stanley,* 216 W. Va. 40, 602 S.E.2d 483, 495 (2004)."); Syl. Pt. 1, *Funeral Services by Gregory, Inc. v. Bluefield Cmty. Hosp.,* 186 W. Va. 424, 413 S.E.2d 79 (1991) ("In order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person."), overruled on other grounds, *Courtney v. Courtney,* 190 W. Va.

We find no error. In syllabus point 3 of *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995), we instructed that,

> [i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

In response to Mr. Shaver's motion for summary judgment, petitioner failed to rehabilitate the evidence that his purported elbow injury was anything other than a degenerative condition not caused by Mr. Shaver during their altercation. Further, he failed to produce additional evidence showing that there was a genuine issue for trial. Suffice it to say, petitioner's argument on appeal that he received medical treatment for the "same elbow" that Mr. Shaver grabbed when escorting petitioner out of the library building is not adequate evidence that a genuine issue exists as to whether he sustained an injury as a result of Mr. Shaver's alleged assault and/or battery. Finally, petitioner failed to submit an affidavit to the circuit court explaining why further discovery was

---

126, 437 S.E.2d 436 (1993). According to petitioner, a rational trier of fact could have found that Mr. Shaver's alleged conduct constituted assault and battery and thus, summary judgment was improperly granted.

A review of petitioner's response to Mr. Shaver's motion for summary judgment reveals that petitioner failed to raise this argument before the circuit court. In fact, petitioner's response failed to cite to any legal authority relating to or defining the torts of assault and battery, the result of which deprived the circuit court of the opportunity to consider, in the first instance, whether Mr. Shaver's alleged contact with petitioner was "harmful or offensive" within the meaning of the torts of assault and battery. Our general rule is that nonjurisdictional questions not raised in proceedings below, but raised for the first time on appeal, will not be considered. *Whitlow v. Bd. of Educ. of Kanawha Cty.,* 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993). We have explained that

> [t]he rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Id.* Having failed to timely raise this argument, we necessarily find that it has been waived. *See Zaleski v. West Virginia Mut. Ins. Co.,* 224 W. Va. 544, 550, 687 S.E.2d 123, 129 (2009) ("Because this argument is now being raised for the first time on appeal, we must necessarily find that the argument . . . has been waived.").

necessary. Because petitioner failed to comply with the requirements of Rule 56, we find no error in the circuit court's conclusion that summary judgment on petitioner's assault and battery claims was appropriate.[6]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

---

[6] Petitioner also assigns as error the circuit court's finding that the general release petitioner signed on February 22, 2017, in conjunction with the dismissal of the criminal offenses filed against him as a result of the Library incident, barred petitioner's claims against respondents. In light of our resolution of petitioner's other arguments on appeal, we need not address this assignment of error.