433 S.E.2d 546

**Mildred Dennis CARY, Plaintiff,**

v.

**Frederic D. RISS, Jr., Defendant.**

No. 21562.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1993.

Decided July 16, 1993.

Richard G. Gay, Law Office of Richard G. Gay, L.C., Berkeley Springs, for plaintiff.

Peter L. Chakmakian, Charles Town, for defendant.

McHUGH, Justice:

This matter is before this Court upon two certified questions by the Circuit Court of Jefferson County as to whether due process requires that notice be given to the beneficiary named in a recorded will that

has been refused probate, and if so, whether the failure to give such notice tolls the statute of limitations until the beneficiary has notice that the will was refused probate.

## I

On October 27, 1980, Bernard M. Dennis died at the age of 91. He was survived by his wife, Sherlie F. Dennis. By his last will and testament dated November 9, 1963, Mr. Dennis devised and bequeathed all of his property to his wife. The clerk of the County Commission of Jefferson County admitted the 1963 will to probate on November 6, 1980. The clerk's admission of the 1963 will to probate was approved by the county commission.

On November 19, 1980, Mildred Dennis Cary, who is Mr. Dennis' niece and the plaintiff in this case, offered another will to probate which was executed by Mr. Dennis while he was a patient at the Veteran's Administration Hospital in Martinsburg, West Virginia, in August of 1980. Under that will, Mr. Dennis left a life estate to his wife, with the remainder to Ms. Cary. The county clerk recorded the will,[1] but refused to admit it to probate on the ground that the witnesses of the second will did not attest to the fact that Mr. Dennis was of "sound sense and memory" when he signed the will. The county clerk's refusal to probate the will was never presented to the county commission, nor did the county commission confirm the clerk's action as required by *W. Va. Code*, 41–5–10 [1923].

On February 7, 1981, Mrs. Dennis sold the property she had received from her husband under the 1963 will to the defendant, Frederic D. Riss, by general warranty deed. Mr. Riss has owned and resided on that property since he purchased it from Mrs. Dennis in 1981.

In 1986, Mrs. Dennis died. Almost three years later, Ms. Cary initiated a civil action in which she sought to have the circuit court revoke the 1963 will and declare that the 1980 will is the last will and testament of Mr. Dennis. She also included in her complaint an action in ejectment to remove Mr. Riss from the property he purchased from Mrs. Dennis in 1981.

At a pretrial conference in this case, Mr. Riss moved to dismiss the case on the grounds that Ms. Cary did not appeal the refusal to admit the 1980 will to probate within eight months as required under *W. Va. Code*, 41–5–7 [1923], and failed to initiate proceedings to impeach the 1963 will within the two-year statute of limitations set forth in *W. Va. Code*, 41–5–11 [1923]. The circuit court then directed that a set of questions be prepared to certify to this Court and that the parties file a joint motion for certification. Upon considering the joint motion for certification, the circuit court entered an order certifying the following two questions to this Court:

1. Do the requirements of due process make it necessary that notice be given to the beneficiary under a will that has been refused probate, but that has been recorded[2] by the Clerk of the County Commission?

2. If so, does the failure to give such notice operate so as to toll the statutes of limitation [*W. Va. Code*, 41–5–7 and *W. Va. Code*, 41–5–11] until such notice or knowledge of such refusal to admit to probate is gained by said beneficiary?

The circuit court answered both of these questions in the affirmative.

## II

In response to the first certified question, we must determine whether due process requires that actual notice[3] be given to the beneficiary under a will which has

---

**1.** We note that under *W. Va. Code*, 41–5–17 [1923], wills are recorded by the county clerk when they are *admitted* to probate. It is, therefore, unclear as to why the clerk recorded the will after he refused to admit it to probate.

**2.** Although the circuit court uses the term "recorded" in referring to the 1980 will, we do not believe this term is relevant to our response to

the certified question, and therefore we shall omit it from our discussion of the issue.

**3.** Notification by mail or otherwise has been construed "as certain to ensure actual notice." *See Lilly v. Duke*, 180 W.Va. 228, 231, 376 S.E.2d 122, 125 (1988).

been refused probate. The will in the case before us was probated pursuant to the ex parte probate procedure set forth in *W. Va. Code*, 41–5–10 [1923]. Mr. Riss contends that the ex parte probate statute, *W. Va. Code*, 41–5–10 [1923], does not require any notice of the clerk's or the county commission's action either admitting or refusing a will for probate. Ms. Cary asserts that due process requires actual notice, and that the ex parte procedures under *W. Va. Code*, 41–5–10 and 41–5–11 violate the due process clause of the Fourteenth Amendment to the *United States Constitution* and article 3, section 10 of the *West Virginia Constitution*.[4]

We shall preface our response to the first certified question with a brief summary of the statutory procedures involved in probate proceedings. To begin with, *W. Va. Code*, 41–5–1 [1931] provides that

[a] person having custody of a will shall, within thirty days after the death of the testator is known to him, deliver such will to the clerk of the county [commission] having jurisdiction of the probate thereof, or to the executor named in the will, who shall offer it for probate, or deliver it to the clerk, within a reasonable time.

Upon delivery of the will to the clerk, the clerk is required to "notify by mail or otherwise the executor and the beneficiaries named in the will, of such delivery[.]" *W. Va. Code*, 41–5–2 [1931]. The will remains in the clerk's office until proceedings may be had for the probate of the will. *W. Va. Code*, 41–5–2 [1931] and *W. Va. Code*, 41–5–3 [1923].

There are two procedures for probate set forth in chapter 41, article 5 of the *West Virginia Code*.[5] *W. Va. Code*, 41–5–5 [1923] provides for probate in solemn form, which requires that notice be given to all heirs and persons having interest in the will.[6] *Barone v. Barone*, 170 W.Va. 407, 408, 294 S.E.2d 260, 261 (1982). The second procedure, which is found under *W. Va. Code*, 41–5–10 [1923], is referred to as ex parte.[7] Under the ex parte procedure, the

---

**4.** Ms. Cary cites *Garner v. Harrison*, 260 Ga. 866, 400 S.E.2d 925, 927 (1991), a case involving a stepdaughter who was a beneficiary under a 1981 will but not under a 1986 will, where the Georgia Supreme Court held that "[t]he seminal cases regarding notice make it clear that where state action may affect a legally protected interest, persons whose names are reasonably ascertainable must receive actual notice of that action."

**5.** The Supreme Court of the United States recognized early on that probate is a matter of state statutory regulation: "The original probate, of course, is mere matter of State regulation, and depends entirely upon the local law; for it is that law which confers the power of making wills, and prescribes the conditions upon which alone they may take effect[.]" *Ellis v. Davis*, 109 U.S. 485, 497, 3 S.Ct. 327, 334, 27 L.Ed. 1006, 1010 (1883). Thus, because our notice requirements for probate proceedings are statutory, any change in the probate laws must come from the legislature. These particular probate statutes have not been amended by the legislature for over fifty years.

**6.** Probate in solemn form is a much more elaborate procedure than the ex parte procedure. *W. Va. Code*, 41–5–5 [1923] provides in relevant part:

The county [commission], sitting in a regular or special session, shall hear and determine all proceedings to admit a will to probate in solemn form. Upon or at any time after the production of a will, any person may offer the will for probate in solemn form by filing in the county [commission] having jurisdiction a petition duly verified by affidavit, stating when and where the testator died, his last place of residence, the nature of his estate, the relationship to decedent and place of residence of each of his heirs at law and distributees, surviving wife or husband, and each of the beneficiaries of the will. Process shall issue against and be served upon all persons interested in the probate of the will to appear at a day named, and show cause why the will should not be admitted to probate.

**7.** Ex parte probate is also referred to as probate in common form. The type of ex parte probate found under *W. Va. Code*, 41–5–10 [1923] is "a survival of the probate procedure under the ecclesiastical law." 79 Am.Jur.2d *Wills* § 840, p. 887 (1975) (footnote omitted). *See also* 3 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills*, § 26.38 (1961); 95 C.J.S. *Wills* § 318 (1957).

The following is a concise explanation of the history of probate in common form:

In seventeenth century England, the ecclesiastical courts had jurisdiction over the administration of the personal estates of deceased persons. Under the practice of those courts, the Ordinary possessed authority to probate wills[.] ... A will could be admitted to probate before the Ordinary either in common

county commission, or the clerk in vacation of the county commission, may proceed to hear and determine whether to admit or refuse a will to probate without giving notice of its action.[8]  *W. Va. Code*, 41–5–10 [1923] provides in relevant part:

At, or at any time after, the production of a will, any person may move the county [commission] having jurisdiction, or the clerk thereof in the vacation of the [commission], for the probate of such will, and the [commission] or the clerk thereof, as the case may be, *may, without notice to any party, proceed to hear and determine the motion and admit the will to probate, or reject the same.* The probate of, or refusal to probate, any will, so made by the clerk, *shall be reported by him to the [commission] at its next regular session,* and, if no objection be made thereto, and

none appear to the [commission], the [commission] shall confirm the same.... [T]he only notice to the parties interested or process against them required in such case shall be upon the notice of contest. (emphasis added). Any person who is aggrieved by an order of the county commission admitting or refusing to admit any will to probate may, within eight months of the order, appeal it to the circuit court under *W. Va. Code*, 41–5–7 [1923].[9] Furthermore, any person who is interested who was not a party to the proceeding for probate ex parte may file a "bill in equity"[10] to impeach or establish a will within two years after the date of the county commission's order admitting or refusing the will to probate. *W. Va. Code*, 41–5–11 [1923].[11]

Two decisions issued by the Supreme Court of the United States, *Mullane v.*

---

form or solemn form. Common form was an ex parte proceeding, consisting of the executor's presentation of the will and his testifying that it was duly executed by the decedent. No notice was given of the proceeding and it was essentially an administrative function, speedily accomplished. English law provided a thirty year period during which the probate could be contested by interested persons. When a caveat was presented, the probate of the will was contested in a formal hearing in solemn form wherein citations were issued to heirs, legatees, and devisees. This procedure was carried to the American colonies and was employed in the system of probate courts which came to be established in the states. The distinction between probate in common form and solemn form has been preserved in several states up to the present day and differs little from the procedures before the Ordinaries in England.
Nolan W. Carson, Comment, *Probate Proceedings—Administration of Decedents' Estates—The Mullane Case and Due Process of Law,* 50 Mich. L.Rev. 124, 129–30 (1951) (footnotes omitted).

8. The Supreme Court of the United States, at the turn of the century, held that an ex parte probate followed by a statutory period allowing for contest of the will and its probate affords due process of law. *Farrell v. O'Brien,* 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101 (1905). However, the Supreme Court's rulings in *Mullane* and *Pope,* discussed *infra,* cast doubt as to whether *Farrell* is still controlling.

9. *W. Va. Code,* 41–5–7 [1923] provides, in relevant part:

Any person feeling himself aggrieved by any [order] or judgment of the county [commission] admitting or refusing to admit any

will to probate may, within eight months, ... file his petition in the circuit court of such county, or before the clerk thereof, appealing to the circuit court from such order or judgment[.]
There may still be an appeal to the circuit court under *W. Va. Code,* 41–5–7 [1923] even in an ex parte probate procedure where there has been no appearance or contest. *In Re Winzenrith's Will,* 133 W.Va. 267, 55 S.E.2d 897 (1949).

10. We note that under Rule 2 of the *West Virginia Rules of Civil Procedure,* "all procedural distinctions between actions, suits and other judicial proceedings at law or in equity and in the forms of action are abolished." *W. Va. R. Civ. P.* 2 recognizes only one form of action known as "civil action."

11. *W. Va. Code,* 41–5–11 [1923] provides, in pertinent part:

After a judgment or order entered ... in a proceeding for probate ex parte, any person interested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by bill in equity to impeach or establish the will, on which bill, if required by any party, a trial by jury shall be ordered, to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent.... *[I]f the judgment or order was entered by the county [commission] and there was no appeal therefrom, such bill shall be filed within two years from the date of such order of the county [commission]. If no such bill be filed within the time prescribed, the judgment or order shall be forever binding.* (emphasis added).

*Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988),[12] are relevant to our determination of what type of notice is required to be given beneficiaries. In *Mullane* the court held that a New York statute, permitting a common trust fund trustee to secure judicial approval of its accounts in a proceeding which only gave notice to trust beneficiaries by publication, did not satisfy due process requirements. *Mullane* established that state action affecting property generally requires notice of such action.[13] In determining that known beneficiaries of the trust were entitled to personal notice, the court explained the type of notice required by due process:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, *to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information, ...* and it must afford a reasonable time for those interested to make their appearance[.]

339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873 (emphasis added and citations omitted). The *Mullane* court, however, qualified that it had "not committed itself to any formula ... determining when constructive notice may be utilized or what test it must meet." *Id.*

More recently, in *Tulsa Professional Collection Services, Inc. v. Pope,* the Supreme Court extended the notice requirements of the Due Process Clause of the Fourteenth Amendment, as interpreted in *Mullane,* to creditors of a decedent's estate who are known or reasonably ascertainable.[14] The court stated that "[a]s a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings." 485 U.S. at 489, 108 S.Ct. at 1347, 99 L.Ed.2d at 578. The court believed that there was a "substantial practical need" to give actual notice to known creditors because an executor or an executrix with a beneficial interest in the estate may not be inclined "to call attention to the potential expiration of a creditor's claim." *Id.*

In responding to the first certified question, we are mindful of the due process concerns expressed by the Supreme Court in *Mullane* and *Pope.* Upon the death of the testator, any person having custody of the testator's will is required by statute to deliver the will to the county clerk or to the executor, who shall offer it for probate or deliver it to the clerk. *W.Va.Code,* 41–5–1 [1931]. Upon delivery of the will to the clerk, the clerk is then required, under *W.Va.Code,* 41–5–2 [1931], to give notice, by mail or otherwise, to the executor and the beneficiaries named in the will. We emphasize that the delivery of the will to the county clerk triggers the notice requirements. Upon receiving such actual notice, beneficiaries have notice that the testator has died, and that probate proceedings will be instituted. Beneficiaries, who have actual notice of the delivery of the will to the county clerk, and thus notice of the testator's death and the institution of probate proceedings, have sufficient information from which they may inquire as to the status of the probate proceedings. Clearly, because beneficiaries have a beneficial interest in the estate, they will in-

---

**12.** Another important decision regarding notice requirements issued by the Supreme Court of the United States is *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). *Mennonite* involved the sale of real property for delinquent taxes. This Court specifically addressed *Mullane, Mennonite* and *Pope* in *Lilly v. Duke,* 180 W.Va. 228, 376 S.E.2d 122 (1988). That case, like *Mennonite,* involved due process requirements for notice of a tax sale of real property.

**13.** *Tulsa Professional Collection Services v. Pope,* 485 U.S. at 484, 108 S.Ct. at 1344, 99 L.Ed.2d at 574.

**14.** Our statutory provisions relating to a creditor's claim against an estate are found in article 2, chapter 44 of the *West Virginia Code.*

quire as to the outcome of the probate proceedings. We believe the notice requirements under *W.Va.Code*, 41–5–2 [1931] satisfy the due process concerns raised by the Supreme Court in *Mullane* and *Pope*.

Furthermore, we do not believe that either due process or *W.Va.Code*, 41–5–10 [1923] requires that beneficiaries, who have been given actual notice under *W.Va.Code*, 41–5–2 [1931], must also be given actual notice that the will was refused probate by the county commission. Our conclusion that beneficiaries are not entitled as a matter of right to actual notice that a will has been refused probate is based not only upon due process requirements, but also upon certain fundamental rules of statutory construction.

*W.Va.Code*, 41–5–10 has not been amended by the legislature since 1923. In 1931, eight years after the last amendment to *W.Va.Code*, 41–5–10, the legislature enacted the notice requirements of *W.Va. Code*, 41–5–2.[15] Although the legislature was aware that *W.Va.Code*, 41–5–10 [1923] provided that no notice was required, it enacted a statute requiring actual notice to be given to beneficiaries when *any* will is delivered to the county clerk. Moreover, the legislature did not add any cross-reference to *W.Va.Code*, 41–5–2 indicating that its provisions did not apply to wills probated under *W.Va.Code*, 41–5–10.

█ Certain rules of statutory construction are relevant here. To begin with, there is a presumption that the legislature, when it enacts legislation, is familiar with its prior enactments. *State ex rel. Foster v. City of Morgantown*, 189 W.Va. 433, 432 S.E.2d 195 (1993); *Hudok v. Board of Education*, 187 W.Va. 93, 415 S.E.2d 897 (1992). Rules of statutory construction require that courts give meaning to all provisions in a statutory scheme and apply them in accordance with the objects of the general system of the law of which they form a

part. We explained this rule in syllabus point 1 of *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983):

'A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed thrt the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.' Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Clearly, the legislature recognized that beneficiaries were entitled to actual notice of the delivery of a will to the county clerk for probate and as a result, enacted *W.Va. Code*, 41–5–2 [1931]. The language in *W.Va.Code*, 41–5–10 which states that the county commission may hear and determine probate without giving notice is not in conflict with the notice requirements of *W.Va.Code*, 41–5–2 for one simple reason: the actual notice given to beneficiaries upon delivery of the will obviates the need for the county commission to give actual notice to beneficiaries of its action. Therefore, the two statutory provisions may be read and applied in accord with the purposes and objectives of the probate laws, and with the requirements of due process.

█ Therefore, in response to the first certified question, we hold that upon delivery of any will to the county clerk, the county clerk is required under the provisions of *W.Va.Code*, 41–5–2 [1931] to notify by mail or otherwise the beneficiaries named under the will. Notification "by mail or otherwise" shall be construed as certain to ensure actual notice. Upon receiving such actual notice, constitutional due process requirements are satisfied be-

---

**15.** Although in 1982 the legislature enacted several amendments to article two, chapter forty-four of the *Code*, relating to creditors' claims against an estate, and enacted a few more amendments to that article in 1988, it has left article five of chapter forty-one virtually untouched since 1931. The only exceptions being that it added *W.Va.Code*, 41–5–20 in 1951, and amended *W.Va.Code*, 41–5–12 in 1972.

cause beneficiaries have notice that the testator has died and that probate proceedings will be instituted. Neither due process nor any statutory provision requires that the beneficiaries must also be given actual notice of the county commission's refusal to probate the will under *W. Va. Code*, 41–5–10 [1923].

As a final matter, we point out that the facts before the circuit court in this case are unusual. Ms. Cary, who raises the issue of the failure to give notice, is not only a beneficiary under the 1980 will but the person who submitted it to probate. We question the merit of her assertion that she was deprived of her right to due process because, as the beneficiary and the person who submitted the will to probate, she clearly had notice of the pendency of the ex parte probate proceedings.

### III

Having answered the first certified question in the negative, we need not address the second certified question.[16] However, we must point out that the ex parte probate in the case before us did not proceed in accordance with *W. Va. Code*, 41–5–10 [1923]. Under *W. Va. Code*, 41–5–10 [1923], "[t]he probate of, or refusal to probate, any will, so made by the clerk, *shall be reported by him to the [county commission] at its next regular session, and, if no objection be made thereto, and none appear to the [county commission], the [county commission] shall confirm the same.*" (emphasis added). As we observed earlier in this opinion, the county clerk, upon refusing the will for probate, did not report

the refusal to the county commission for its confirmation. *In re Winzenrith's Will*, 133 W.Va. 267, 276, 55 S.E.2d 897, 902 (1949) (the county clerk may use the ex parte procedure but it must be confirmed by the county commission to make it valid and effective). While the county clerk may, in vacation of the county commission, admit or refuse a will to probate, *W. Va. Code*, 41–5–10 [1923] requires that the commission confirm the clerk's action.

As we previously pointed out, a person who was not a party to the ex parte probate and seeks to impeach the will under *W. Va. Code*, 41–5–11 [1923] may do so within two years of the county commission's order admitting or refusing the will to probate. *W. Va. Code*, 41–5–11 [1923] does not apply until after there has been an order of the county commission. Moreover, a person seeking to appeal an order of the county commission either refusing or admitting the will under the provisions of *W. Va. Code*, 41–5–7 [1923] must do so within eight months of the judgment of the county commission. *W. Va. Code*, 41–5–7 [1923] is also not applicable until a judgment has been entered by the county commission. Here, however, no order was issued by the county commission regarding the refusal to admit the will to probate.

Clearly, the limited facts we have before us raise several questions. Yet, this Court cannot anticipate every issue that may arise in this case based upon the record before us.[17] The circuit court certified questions to us following a pretrial conference, and the factual record has not been fully developed.[18] Therefore, in addition to

---

**16.** The second certified question asked this Court to determine whether the failure to give the beneficiary under a recorded will notice of the refusal to probate the will tolls the statutes of limitations under *W. Va. Code*, 41–5–7 and *W. Va. Code*, 41–5–11 until the beneficiary has notice of the refusal to probate the will. However, we have held that due process does not require that beneficiaries, who are given actual notice that the will has been delivered to the county clerk under *W. Va. Code*, 41–5–2 [1931], must also be given actual notice of the refusal of a will to probate.

**17.** Although the issue of the statute of limitations has been raised, there are other issues

which may arise depending upon the facts presented to the circuit court. For example, while there was no order of the county commission entered that Ms. Cary could either impeach or appeal, thirteen years have passed since the 1980 will was submitted by Ms. Cary to probate. This raises the issue of whether the doctrine of laches applies. *See Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982); *Hoffman v. Wheeling Savings & Loan Ass'n*, 133 W.Va. 694, 57 S.E.2d 725 (1950).

**18.** Mr. Riss acknowledges in his reply brief that the questions certified by the circuit court "were done with a minimal record[.]"

the legal issues, all of the factual matters, including those discussed in this opinion, must be resolved initially by the circuit court. This Court has consistently recognized that "upon receiving certified questions [from a circuit court] we retain some flexibility in determining how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale, and Dept. Store Union, AFL–CIO,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980), *citing West Virginia Water Service Co. v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957). *See also Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993).

## IV

For the reasons stated herein, the first certified question is answered in the negative. Having answered the first certified question in the negative, this case is dismissed from the docket of this Court.

Certified question answered; case dismissed.