600 S.E.2d 233

**Joann JONES and Clarence C. Jones, Plaintiffs Below, Appellants,**

v.

**Ali ABURAHMA, M.D., Mark A. Choueriri, M.D., and Charleston Area Medical Center, Defendants Below, Appellees.**

**No. 31553.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 24, 2004.

Filed: June 18, 2004.

---

J. Steven Hunter, Esq., Steve Hunter Associates, Lewisburg, for Appellants.

Dina M. Mohler, Esq., Kay, Casto & Chaney, Charleston, for Appellee Charleston Area Medical Center.

J. Victor Flanagan, Esq., Theresa Kirk–Craig, Esq., Pullin, Fowler & Flanagan, Charleston, for Appellee Ali Aburahma, M.D.

PER CURIAM.

The appellants Joann Jones and her husband, Clarence C. Jones,[1] appeal the circuit court's order granting summary judgment in favor of the appellees, Dr. Ali Aburahma and Charleston Area Medical Center.[2] The appellants argue that the circuit court erred in finding that the appellants had filed their causes of action outside the statute of limitations.

We affirm the circuit court's order.

I.

On or about July 24, 1998, the appellant Joann Jones underwent a coronary angioplasty, a heart catherization, and a stent placement at Charleston Area Medical Center ("CAMC"). At the site of the catherization, Ms. Jones developed a pseudoaneurysm.[3] In early August of 1998, Ms. Jones was admitted to CAMC and had a vascular consultation with appellee Dr. Ali Aburahma. On August 24, 1998, Dr. Aburahma advised Ms. Jones to "continue with her normal activities" and that there was a fifty percent chance that the pseudoaneurysm would improve "spontaneously."[4]

---

1. Mr. Jones also filed a derivative loss of consortium claim.

2. In circuit court, the appellants voluntarily dismissed Dr. Mark A. Choueriri from this action.

3. A pseudoaneurysm is a leak in the artery that causes blood to collect or pool under the skin in a localized area. A pseudoaneurysm often forms at the site of a catherization.

4. The appellants' experts opined that spontaneous resolution of a pseudoaneurysm occurs in

On September 10, 1998, Ms. Jones contacted Dr. Aburahma's office and was informed that she had been scheduled for surgery on September 30, 1998. It appears that later the same evening, Ms. Jones' pseudoaneurysm ruptured and blood began visibly pooling underneath Ms. Jones' skin.[5] Ms. Jones was rushed to a local hospital in Greenbrier County, and then transported to CAMC in Kanawha County.

At CAMC, Dr. Aburahma repaired Ms. Jones' ruptured pseudoaneurysm. Ms. Jones remained in the hospital and received follow-up care. While hospitalized, under the care of CAMC and Dr. Aburahma, Ms. Jones suffered a "cerebrovascular accident," which is more commonly known as a "stroke."

After receiving rehabilitative treatment for her stroke, Ms. Jones was discharged from CAMC on September 28, 1998. On October 1, 1998, Ms. Jones was readmitted for treatment of an infection at the site of the ruptured pseudoaneurysm. Ms. Jones was again discharged from CAMC on October 22, 1998. Ms. Jones last sought treatment from the appellees on November 23, 1998. Ms. Jones continues to suffer pain and physical limitations.

On January 12, 1999, Ms. Jones and her husband engaged the services of an attorney. On behalf of the appellants, counsel requested Ms. Jones' medical records from CAMC. Despite several subsequent requests, CAMC did not provide Ms. Jones' medical records to appellants' counsel until July 30, 1999—approximately six months after appellants' counsel's initial request for the medical records.

Appellants' counsel then forwarded Ms. Jones' medical records to two medical experts for evaluation. The experts' medical reports, dated May 5, 2000, and June 7, 2000, respectively, were not, according to appel-

lants' counsel, received until September 26, 2000.[6]

On November 17, 2000, the appellants filed their complaint against the appellees.

Arguing that the statute of limitations barred Ms. Jones' medical malpractice action and her husband's derivative loss of consortium claim, the appellees filed motions for summary judgment. The appellees contend that the statute of limitations began to run on, at the latest, October 1, 1998, the date Ms. Jones was admitted to CAMC for treatment of an infection at the site of her catherization.

The appellants argue that the statute of limitations should begin to run on November 23, 1998, the date that the appellees last provided medical care to Ms. Jones. The appellants also argue that the "discovery rule" should toll the statute of limitations based on the appellees' delay in providing Ms. Jones' medical records.

The circuit court held a hearing, and, in December of 2002, granted the appellees' motions for summary judgment. In granting the appellees' motions for summary judgment, the circuit court found that the alleged acts of negligence all occurred on or before October 1, 1998, and that the discovery rule did not toll the statute of limitations. Therefore, the circuit court found that the appellants' actions were barred by the statute of limitations.

The appellants now appeal from the circuit court's order granting the appellees' motions for summary judgment.

## II.

■ This Court has consistently held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

---

less than six percent of all cases.

5. According to the appellants' experts, the standard of care for Ms. Jones' pseudoaneurysm was urgent operative treatment "to avoid the risk of rupture and embolization," and that the appellees' delay in treating Ms. Jones' pseudoaneurysm "placed the claimant's life and limb at risk."

6. As explained by appellants' counsel at oral arguments, counsel had been working with the two medical experts through a "middle man." According to appellants' counsel, this middle man timely received the two experts' reports, but failed to promptly forward the reports to appellants' counsel.

At issue is whether Ms. Jones filed her medical malpractice action within the two-year statute of limitations. "The Medical Professional Liability Act, *W.Va.Code,* 55–7B–4(a) [1986] [7] ... requires an injured plaintiff to file a [medical] malpractice claim against a health care provider within two years of the date of the injury, or 'within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs[.]'" Syllabus Point 1, in part, *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 711, 487 S.E.2d 901, 906 (1997).

■ Ordinarily, the applicable statute of limitation begins to run when the actionable conduct first occurs, or when an injury is discovered, or with reasonable diligence, should have been discovered. *W.Va.Code,* 55–7B–4 [1986].[8] The discovery rule recognizes "the inherent unfairness of barring a claim when a party's cause of action could not have been recognized until after the ordinarily applicable period of limitation." *Harris v. Jones,* 209 W.Va. 557, 562, 550 S.E.2d 93, 98 (2001). "[U]nder the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syllabus Point 2, in part, *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 711, 487 S.E.2d 901, 906 (1997).

■ There are two common situations when the discovery rule may apply. The first occurs when "the plaintiff knows of the existence of an injury, but does not know the injury is the result of any party's conduct other than his own." *Gaither,* 199 W.Va. 706, 713, 487 S.E.2d 901, 908 (1997) (*modifying Hickman v. Grover,* 178 W.Va. 249, 358 S.E.2d 810 (1987)). In *Gaither,* this Court held that a question of fact exists as to when Mr. Gaither first "became aware" that the hospital's negligence, as opposed to his own negligence, may have resulted in the amputation of his leg. "[W]e find nothing in the record to indicate that the appellant had any

reason to know before January 1993 that City Hospital may have breached its duty and failed to exercise proper care, or that City Hospital's conduct may have contributed to the loss of his leg." 199 W.Va. 706, 715, 487 S.E.2d 901, 910.

The second situation may occur when an individual "does or should reasonably know of the existence of an injury *and* its cause." *Gaither,* 199 W.Va. at 713, 487 S.E.2d at 908 (emphasis added). In footnote 6 of *Gaither,* this Court lists instances where "causal relationships are so well-established [between the injury *and* its cause] that we cannot excuse a plaintiff who pleads ignorance." These instances include a patient who, after having a sinus operation, lost sight in his left eye, and a patient who, after undergoing a simple surgery for the removal of a cyst, was paralyzed in both legs. *Gaither,* 199 W.Va. at 712, 487 S.E.2d at 907 (internal citations omitted).

■ In such instances, when an individual knows or should reasonably know of the injury *and* its cause, the injured party must "make a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship" for the discovery rule to apply. 199 W.Va. at 713, 487 S.E.2d at 908 (*quoting Cart v. Marcum,* 188 W.Va. 241, 245, 423 S.E.2d 644, 648 (1992)).

■ First, Ms. Jones argues that the circuit court erred in finding that the statute of limitations began to run on October 1, 1998, instead of on November 23, 1998. The appellants argue that November 23, 1998, should be the controlling date because Ms. Jones last sought treatment from the appellees on November 23, 1998. However, neither the appellants' complaint nor the appellants' experts alleged that any acts of medical malpractice occurred after October 1, 1998.

The record reveals that Ms. Jones knew, or reasonably should have known, of the appellees' alleged negligence on or before October 1, 1998. The appellants make no

---

7. The 2003 amendments to the Medical Professional Liability Act do not apply in the instant case.

8. *W.Va.Code,* 55–7B–4(a) [1986] states, in pertinent part, that:

A cause of action for injury to a person alleging medical professional liability against a

health care provider arises as of the date of injury, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury[.]

allegation, and we see no evidence in the record of any malpractice on November 23, 1998. The treatments that Ms. Jones received from the appellees after October 1, 1998, were not additional acts of malpractice, but treatment for the alleged medical malpractice that had already occurred. In the instant case, the statute of limitations begins to run at the date of injury—not from the last date of treatment. The circuit court correctly found that the statute of limitations was triggered for Ms. Jones' medical malpractice action on October 1, 1998.

■ Second, Ms. Jones argues that the "discovery rule" should extend the statute of limitations because the appellees did not furnish Ms. Jones' medical records for six months.

In cases where a claimant knows of her injuries and the cause of her injuries, the claimant must "make a strong showing of fraudulent concealment, inability to comprehend the injury or other extreme hardship" for the discovery rule to apply. In some circumstances, the failure to timely provide medical records could rise to the level of fraudulent concealment.

In the instant case, Ms. Jones knew that she had been injured and she suspected that the appellees may have breached the duty of care owed to her. Although it appears that the appellees did not provide Ms. Jones' medical records until July 30, 1999, appellants' counsel had sufficient time to file the appellants' complaint in a timely manner. Even assuming that appellants' counsel did not receive the medical reports from the appellants' own experts until September 26, 2000, appellants' counsel offered no explanation why he did not file the appellants' complaint until November 17, 2000. The appellants have failed to prove that the discovery rule should apply to extend the statute of limitations for the appellants' claims.

### III.

Therefore, we affirm the circuit court's order granting summary judgment in favor of the appellees.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

MCGRAW, Justice, dissenting.

I am compelled to dissent from the majority opinion in this case because, at once, it rewards the hospital for its dilatory conduct while forcing the Appellant to suffer the ultimate penalty. Appellant repeatedly requested copies of her medical records for the purpose of forwarding them to objective medical experts so that it could be fairly determined whether the defendant hospital, among others, acted negligently in treating her. It took some six months for the hospital to finally comply with the Appellant's initial request. As a result, the hospital subtly (but effectively) appropriated one quarter of the applicable limitations period, leaving Appellant with that much less time to acquire an expert opinion and, ultimately, to file her complaint. Because I disapprove of the hospital's careless conduct and inattentiveness in this regard—the effect of which foreclosed the Appellant from seeking a remedy for her injuries—I respectfully dissent.