· 637 S.E.2d 350

Donald N. DAVEY and Nellie J. Davey,
Plaintiffs Below, Appellants

v.

The ESTATE OF William H. HAG-
GERTY, et als., Defendants
Below, Appellees.

No. 32858.

Supreme Court of Appeals of
West Virginia.

Submitted: March 14, 2006.

Decided: May 12, 2006.

Concurring Opinion of Justice
Benjamin July 27, 2006.

Richard G. Gay, Nathan P. Cochran, Greg Garretson, Law Office of Richard Gay, Berkeley Springs, Clinton Ritter, Winchester, VA, for the Plaintiffs.

The Estate of William H. Haggerty, et als., Pro se.

PER CURIAM.

Donald N. Davey and Nellie J. Davey appeal from the November 8, 2004, order of the Circuit Court of Mineral County denying their motion for reconsideration following an adverse summary judgment ruling that was issued by the trial court on February 11, 2004. Through the civil action they initiated below, the Daveys sought a declaratory judgment that the last will and testament of William H. Haggerty that was admitted ex parte to probate more than five years after Mr. Haggerty's death was fraudulent and therefore unenforceable. In granting summary judgment against the Daveys, the trial court found the discovery rule inapplicable and relied upon both the six-month statutory period for challenging a will admitted to probate and the two-year statute of limitations for fraud to bar the Daveys from pursuing their claims. Upon our review of this matter, we determine that the trial court committed error in failing to apply the discovery rule to the statutory claim and by wrongly ruling that the statute of limitations had run with regard to Appellants' common-law fraud claim. Accordingly, the decision of the circuit court is reversed and remanded.

## I. Factual and Procedural Background

William Haggerty died intestate on June 10, 1989, leaving a wife, Edith E., and eight children. Appellant Nellie Davey is one of Mr. Haggerty's eight children. Edith Haggerty was appointed as administratrix of the estate on June 23, 1989.

On or about March 1, 1991, the Daveys moved onto a portion of the 177–acre homestead that was owned by Mr. Haggerty at the time of his death. The Daveys contend they moved onto the property with the con-

sent of the estate and that they made major improvements to the property by establishing a residence, several outbuildings, a well, and a septic system.

On January 12, 1995, a document purporting to be the last will and testament of William H. Haggerty, which was dated November 16, 1988, was presented by Edith Haggerty to the County Clerk's office for entry into probate. The Daveys maintain that they were not provided with notice of the ex parte filing of this document. The document at issue was recorded in the will book of the Office of the Clerk of the Mineral County Commission on January 12, 1995. Under this will, Edith Haggerty was the only named beneficiary.

The Daveys first learned of the existence of the purported will on October 29, 1996, when they received a letter from an attorney for the estate demanding that they vacate the property on which they were residing by midnight of November 30, 1996. They maintain that the county clerk's office never apprised them of the ex parte filing of the document in January 1995.

The Daveys did not discover the fraudulent nature of the purported will until April 24, 1998. On that date, they were informed by Gerald B. Richards, a forensics document expert, that the paper on which the purported will was written was not manufactured until two years after the date when the will was ostensibly executed.

On or about October 1, 1998, the Daveys filed their complaint with the circuit court, seeking a declaration of the will's fraudulent nature. During the discovery phase of this case, Mr. Richards was deposed. He testified that the will, in his opinion, is a forgery based on the fact that it purports to have been signed on November 16, 1988, but is printed on paper that was first manufactured in 1990.

As additional evidence of the fraudulent nature of the will in question, the Daveys obtained an affidavit from Edward Kennedy. Mr. Kennedy is the General Plant Manager of Southworth Paper Company, the company

that manufactured the paper on which the purported will was prepared. In his affidavit, dated December 29, 1999, Mr. Kennedy verified the list of water markings used by Gerald Richards in identifying the manufacture date of the paper on which the purported testamentary document was printed.

When the Appellee estate was asked through a request for admissions if it had any facts with which to contradict the contents of Mr. Kennedy's affidavit, the estate, through counsel, expressly indicated that "[t]hey admit that at this time they have no facts to contradict the contents of the Affidavit of Edward Kennedy." To date, Appellants note that the estate has not presented any evidence to dispute the conclusions of Mr. Kennedy or Mr. Richards regarding the paper on which the will held out to be that of Mr. Haggerty was prepared.

Despite the lack of evidence to controvert the evidence suggesting that the purported will was a fraud, the trial court granted the Appellee estate's motion for summary judgment on February 11, 2004, dismissing the case with prejudice. In making this ruling, the trial court concluded that both the six-month statutory period for challenging a probated will [1] and the two-year limitations period for asserting a common-law fraud claim [2] had passed before the filing of the underlying action.

The Daveys filed motions pursuant to both Rule 59(e) and Rule 60(b) of the West Virginia Rules of Civil Procedure through which they sought to have the trial court reconsider its ruling. On November 8, 2004, the trial court denied the post-judgment motions filed by the Appellants. It is from this denial that the Daveys seek relief.

## II. Standard of Review

We announced the standard against which we review the denial of Rule 59(e) motions in syllabus point one of *Wickland v. American Travellers Life Insurance Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998): "The standard of review applicable to an appeal from a

---

1. *See* W.Va.Code § 41–5–11 (1994) (Repl. Vol. 2004).

2. *See* W.Va.Code § 55–2–12(b) (1959) (Repl. Vol. 2000).

motion to alter or amend a judgment, made pursuant to W.Va.R.Civ.P.59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Because the underlying ruling was a summary judgment motion, the standard of review for the Rule 59(e) motion is the same as that routinely utilized to examine whether a trial court correctly granted summary judgment. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) (holding that grants of summary judgment are reviewed *de novo*).

With regard to a trial court's decision not to grant a Rule 60(b) motion, we have recognized that an abuse of discretion standard governs that type of ruling. In *Delapp v. Delapp*, 213 W.Va. 757, 584 S.E.2d 899 (2003), we observed:

"[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." ... "A court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va.R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits."

213 W.Va. at 760, 584 S.E.2d at 902 (citations omitted).

With these standards in mind, we proceed to determine whether the lower court erred in initially granting summary judgment or in refusing to set aside that ruling upon Appellants' motion for reconsideration.

### III. Discussion

▬▬ In refusing to apply the discovery rule[3] to this case, the trial court cited this

Court's holding in syllabus point three of *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992), that

[m]ere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.

Applying this law to the facts of this case, the trial court ruled that "[p]laintiffs have failed to make any showing, much less a strong showing, that the Defendants concealed anything or in any way prevented the Plaintiffs through the exercise of due diligence from finding the will."

Inexplicably, the trial court charged Appellants with a duty to know or discover on their own that the purported will was filed with the county clerk in 1995.[4] Despite the fact that Appellants first had any knowledge of the purported will in October 1996 when they were instructed to vacate the property on which they were residing, the trial court found: "[T]he fact that a will surfaced and was recorded in 1995, five years after the testator's death would be enough to put the Plaintiffs on notice to make inquires [sic] and ask questions regarding the source of the document." Rather than finding that Appellants had knowledge of the will's existence before October 1996, the circuit court based its ruling on the fact that Appellants, or, specifically, Mrs. Davey as an heir to the estate, "had an ongoing interest in this matter and the incentive ... to check the status of the estate."

In *Jones v. Aburahma*, 215 W.Va. 521, 600 S.E.2d 233 (2004), we commented:

existence of the purported will in late October 1996. The record submitted in this case does not contain any documentation to indicate that notice was given to the Appellants of the January 1995 filing of the alleged will by Mrs. Haggerty or by any local government employee when the will was lodged with the county clerk.

---

**3.** By the "discovery rule" we are referring to our holding in syllabus point one of *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992), that "the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim."

**4.** The Appellee estate does not dispute the contention of Appellants that they first learned of the

Ordinarily, the applicable statute of limitation begins to run when the actionable conduct first occurs, or when an injury is discovered, or with reasonable diligence, should have been discovered. The discovery rule recognizes "the inherent unfairness of barring a claim when a party's cause of action could not have been recognized until after the ordinarily applicable period of limitation." *Harris v. Jones,* 209 W.Va. 557, 562, 550 S.E.2d 93, 98 (2001). "[U]nder the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim."

*Jones,* 215 at 524, 600 S.E.2d at 236 (footnote and some citations omitted).

In adopting the "discovery rule" for tortious causes of action in *Cart,* we clarified that the rule could not merely be employed whenever a potential plaintiff was simply unaware of the existence of a cause of action or the identity of the tortfeasor. 188 W.Va. at 245, 423 S.E.2d at 648. Under *Cart,* something more than a mere lack of awareness of the injury or the wrongdoer's identity was required to invoke the rule. As we elucidated in *Cart,* "to benefit from the rule, a plaintiff must make a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship. . . ." *Id.* at 245, 423 S.E.2d at 648 (footnotes omitted).

■ Later, this Court further clarified the operation of the "discovery rule" by ruling in syllabus point four of *Gaither v. City Hospital, Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997):

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

As we explained in *Gaither,* "[t]his rule tolls the statute of limitations until a plaintiff, acting as a reasonable, diligent person, dis-covers the essential elements of a possible cause of action, that is, discovers duty, breach, causation and injury." 199 W.Va. at 714, 487 S.E.2d at 909. The significance of our holding in *Gaither,* as we articulated in *McCoy v. Miller,* 213 W.Va. 161, 578 S.E.2d 355 (2003), was the expansion of the "discovery rule" in terms of clarifying when a plaintiff could be charged with knowing or having an obligation to know of a potential claim's accrual. *See id.* at 164–65, 578 S.E.2d at 358–59 (recognizing that, under *Gaither,* "discovery rule" linked running of limitations period with prospective plaintiff's knowledge, or duty to gain such knowledge, of identity of entity owing plaintiff duty of care along with causal connection of his/her injury resulting from breach of that duty of care).

In discussing the changes that *Gaither* introduced to the application of the "discovery rule," we recognized in *McCoy* that

> we did not eliminate the affirmative duty the law imposes on a plaintiff to discover or make inquiry to discern additional facts about his injury when placed on notice of the possibility of wrongdoing. The crux of the "discovery rule" has always been to benefit those individuals who were either unaware of their injuries or prevented from discovering them. See *Cart,* 188 W.Va. at 244–45, 423 S.E.2d at 647–48; *Gaither,* 199 W.Va. at 713, 487 S.E.2d at 908 (recognizing that "discovery rule has its origins in the fact that many times an injured party is unable to know of the existence of any injury or its cause"). When this Court augmented the application of the "discovery rule" to cases beyond those where the defendant actively sought to prevent the discovery of the malfeasance, we did not eradicate the rule's additional objective of benefitting those individuals who were unaware of their injuries due to no fault of their own.

*McCoy,* 213 W.Va. at 165, 578 S.E.2d at 359.

■ In charging the Appellants with a duty to investigate the ex parte filings of documents with the county clerk's office, we believe that the trial court has wrongly imposed a duty where none exists. Within the two-year period that followed their indirect

notification of the will's filing—October 29, 1996—the Appellants filed the declaratory judgment action below.[5] Consequently, because the Appellants' common law fraud claim was timely filed within the applicable two-year period of limitations, there is no need to apply the "discovery rule" to this claim. *See* W.Va.Code § 55-2-12(b) (1959) (Repl. Vol. 2000).

In addition to finding that the two-year statute of limitations had run, the trial court determined that the six-month period for attempting to impeach a will that is imposed by West Virginia Code § 41-5-11 had similarly run before the filing of Appellants' action. By statute, the county clerk was required upon the ex parte filing of a testamentary document to report the filing of the document to the county commission and the county commission then is required by statute to enter an order either admitting or refusing to admit the will to probate. *See* W.Va.Code § 41-5-10 (1923) (Repl. Vol. 2004). Although the trial court made a finding that "the County Commission and the Clerk of the County Commission followed the probate laws of West Virginia," the record in this case does not support this finding. Counsel for the Appellee estate acknowledged at the hearing on its summary judgment motion that "the records in the Office of the Clerk of the County Commission do not speak on the matter as to whether the Clerk did report the ex parte probate of Mr. Haggerty's Will; nor do those records speak as to whether the County Commission did or did not confirm the probate of Mr. Haggerty's Will."

The significance of whether the statutory procedures for the filing of an ex parte document were complied with is that the six-month period that is provided by statute under West Virginia Code § 41-5-11 for impeaching such a will only operates "after" a judgment or order is filed by the County Commission in conformity with West Virginia Code § 41-5-10. Despite the dearth of evidence on this issue,[6] the trial court simply presumed that "the County Commission did its statutorily prescribed duty promptly and approved the Clerk's action." Unlike the trial court, we conclude that lack of evidence in the record on the issue of whether the county commission entered an order admitting the purported will to probate leaves this issue of statutory compliance open for debate.

Critically, the facts of this case fall squarely into the paradigm of those cases where the prospective plaintiff, through no fault of his or her own, is prevented from knowing of the existence of an actionable claim. Given the lack of notice that Appellants had with regard to the filing of the purported will combined with the lengthy passage of time after the death of Mr. Haggerty before the document was filed, there is no conceivable way (other than periodically checking on filings)[7] they could have been expected to learn that such document had been lodged by the administratrix and sole beneficiary under the purported will.

As we recognized in *Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 144 S.E.2d 156 (1965), "[t]he basic purpose of statutes of limitations is to encourage promptness in instituting actions; to suppress stale demands or fraudulent claims; and to avoid inconvenience which may result from delay in asserting rights or claims when it is practicable to assert them." *Id.* at 791, 144 S.E.2d at 161. The facts of this case are devoid of any suggestion that Appellants sat on their rights or could have discovered at an earlier date that the will, which apparently was a sophisticated forgery, was not what it purported to be. Rather than supporting the objectives of

---

5. The civil action below was initiated on or about October 1, 1998.

6. Surprisingly, the trial court suggests that Appellants were at fault for not bringing forth evidence as to "the date of the County Commission's confirmation of the County Clerk's Probate Order dated January 12, 1995."

7. This Court cannot conceive why the trial court would have sought to impose upon Appellants a duty to periodically inspect court filings to espy the possible recordation of a previously nonexistent will. The Davies addressed their "inaction" through a joint affidavit: "We had no reason to check the records at the Courthouse because we were informed that when Mr. Haggerty died, we owned an interest in the farm and that a Will did not exist."

the "discovery rule," the trial court's ruling unquestionably resulted in an "inherent unfairness" by denying Appellants the opportunity to pursue their cause of action to set aside what the Appellee estate has essentially admitted to be a fraudulent testamentary document. *Harris*, 209 W.Va. at 562, 550 S.E.2d at 98. While we appreciate the trial court's concern for promoting finality as to the settling of estates, we believe it is necessary to reverse the outcome in the interests of justice. Given the estate's clear admission of its lack of evidence to contradict the findings of Appellants' expert regarding the authenticity of the will, we cannot uphold the trial court's decision to grant summary judgment to the estate and deny Appellants their day in court.

Based on the foregoing, the decision of the Circuit Court of Mineral County is hereby reversed and remanded for further proceedings.

Reversed and remanded.

BENJAMIN, J., concurring.

(Filed July 27, 2006)

I join in the majority opinion. I write separately to emphasize the potential for the violation of the process due to heirs at law of an estate West Virginia's *ex parte* procedures for probating a will. I believe this to be an issue ripe for consideration by the West Virginia Legislature.

Some may read the majority opinion as implying that if it were shown that the clerk of the county commission reported his *ex parte* probate of William Haggerty's alleged will to the county commission and if the county commission confirmed the clerk's probate as provided in W. Va.Code § 41–5–10 (1923), then the Appellants' action to impeach the will would have been barred by W. Va. Code § 41–5–11 (1994) (since their complaint was not filed within six months of the commission's order of confirmation). Under such a reading, the Appellant's action would be barred even if they had no knowledge of the existence of the will within that period. Since Appellant Nellie J. Davey was an heir at law of her father's estate, I would be unable to agree with such a result absent a showing of notice to Ms. Davey of the delivery of her father's supposed will to the clerk as provided in W. Va.Code § 41–5–1 (1931), or of the clerk's hearing to determine whether the will should be admitted to probate as provided in W. Va.Code § 41–5–10.

The issues in this case were framed at the circuit court level in terms of statutory time-limit bars to the Appellants' civil action to impeach the supposed will. This framing presupposes that Appellants had some duty to keep checking with the clerk's office some five and one-half years after the death of Mr. Haggerty to determine whether a supposed will which would divest Ms. Davey of her intestate share of her father's estate had been belatedly delivered to the clerk. This duty would apparently require the Davey's to perform such checks even after Mr. Haggerty's estate was administered and finalized as an intestate estate, and even after Ms. Davey and her husband had moved onto a portion of her deceased father's property, as a descendant of her father, and had lived there, making improvements, for nearly four years. That, it seems to me, constitutes an onerous and misplaced burden for an heir at law such as Ms. Davey.

This case would not have arisen as it did procedurally had our statutory law relating to *ex parte* procedures for probating a will required notice to known heirs at law of the delivery of a will to the county commission clerk or of a hearing on a motion to probate a will. Currently, W. Va.Code § 41–5–1 requires a person having custody of a will to deliver it either to the clerk of the county commission having jurisdiction of the probate or to the executor named in the will within thirty days after the death of the testator is known to such person. If delivery is made to the named executor, he or she is required to offer the will for probate or to deliver it to the clerk within a reasonable time.

After the clerk receives the will, he or she is required by W. Va.Code § 41–5–2 (1931) to "notify by mail or otherwise the executor and the beneficiaries named in the will, of such delivery[.]" This notice is, under our current statutory law, limited in scope. The clerk is not obligated to provide any notice whatsoever to the heirs at law of the testator who

would receive a share of the estate if the will were for any reason invalid or fraudulent. The rationale for notice to a named beneficiary under a will is obvious. Such a beneficiary could be deprived of a property interest if the will was not admitted to probate for some reason. An heir at law of the deceased may likewise be deprived of a property interest if, without his or her knowledge, an invalid or fraudulent will which works to the heir's prejudice is admitted to probate. And yet, because of the limited scope for notice currently in our statutory law, an heir at law receives no statutorily-required notice, constructive or otherwise, of the delivery of a will to the clerk.

W.Va.Code § 41–5–10 provides that "[a]t, or at any time after, the production of a will, any person may move the county court [now county commission] having jurisdiction, or the clerk thereof in the vacation of the court, for the probate of such will, and the court or the clerk thereof, as the case may be, may, without notice to any party, proceed to hear and determine the motion and admit the will to probate, or reject the same." The phrase "without notice to any party" makes apposite

the statutory description of the procedures as "ex parte." [1] In contrast to the ex parte procedures for probating a will, probate in solemn form, as provided in W. Va.Code § 41–5–5 (1923), requires that notice be given to all heirs and persons having an interest in the will. See Cary v. Riss, 189 W.Va. 608, 611, 433 S.E.2d 546, 549 (1993).

This notice issue was reviewed in Chad Lovejoy, Note, CARY v. RISS: Protecting Due Process Concerns in West Virginia Probate, 98 W. Va. L.Rev. 687 (1996). This Note identified that heirs at law who should be considered to have an interest in the probate of a particular will were not given the due process protection of notice of the delivery of a will to the clerk or of a probate hearing simply because they were not named beneficiaries in a will. The Note suggested that the issue should receive the attention of the West Virginia Legislature.[2] Ten years later, the concerns expressed in this Note are present in the instant case before us.

Likewise, in Gary B. Kline, Constitutionality of Notice in Virginia Probate and Estate Administration, 42 Wash. & Lee L.Rev. 1325 (1985), similar notice problems were

---

1. W. Va.Code § 44–1–13 (1953), obligates the court or clerk before whom an executor or administrator qualifies to "require such executor or administrator to file his own affidavit, or the affidavit of some credible person, showing the names and, as far as possible, the addresses of the persons who would take any part of the estate of the decedent as heirs or distributees in case of the intestacy of the decedent and of the persons who are devisees and legatees under the will, if any, of the decedent, and their relationship to the decedent, and the clerk of the court shall record such affidavit in the fiduciary record, which affidavit and the record thereof shall be prima facie evidence of what is contained therein."

W. Va.Code § 44–1–14a(a) (2002), provides that "[w]ithin thirty days of the filing of the appraisement of any estate as required in section fourteen of this article [or, according to subsection (b), within six months of the qualification of the personal representative if no appraisement is filed within the time period established pursuant to section fourteen of this article], the clerk of the county commission shall publish, once a week for two successive weeks, in a newspaper of general circulation within the county of the administration of the estate, a notice which is to include [among other things] ... (8) A statement that any person seeking to impeach or establish a will must make a complaint in accordance with

the provisions of section eleven, twelve or thirteen, article five, chapter forty-one of this code[.]" That same Code section in subsection (d) requires the personal representative "within ninety days after the date of first publication, [to] serve a copy of the notice, published pursuant to subsection (a) of this section, by first class mail, postage prepaid, or by personal service on the following persons: ... (3) If there is not a will and the personal representative is not the sole heir, any heirs[.]"

Whether the published notice would fulfill any due process rights of heirs at law to notice that is missing in the ex parte probate procedures is doubtful in my mind if for no other reason than that due process requires, as interpreted in Cary v. Riss, 189 W.Va. 608, 433 S.E.2d 546 (1993), that "notification 'by mail or otherwise' shall be construed as certain to ensure actual notice." Syllabus, Cary. The obligation imposed upon personal representatives in W. Va.Code § 44–1–14a(d) to serve a copy of the published notice "by first class mail, postage prepaid, or by personal service" would not by its terms include such service on heirs if there is a will.

2. Mr. Lovejoy also identified devisees and legatees under prior wills, disclaimers and the State as also having a sufficient interest in the probate of a will as to merit due process notice of a will's delivery or probate. Id. at 703–708.

identified with respect to Virginia's statutory scheme. Therein, it was noted that Virginia also employed the traditional distinction between common form *ex parte* and solemn form *inter partes* probate. *Id.* at 1328–9. The article recognized that "Virginia's notice requirements for probate and for estate administration remain virtually unchanged from the statutes enacted almost two centuries ago." *Id.* at 1329. Thus, "[i]f the party admitting the will to probate chooses an *ex parte* probate proceeding, the court reviews the will without summoning any interested party." *Id.* The Virginia probate procedure, as described, was therefore very similar to ours. After an extensive review of United States Supreme Court decisions and analysis, the article concluded:

> Virginia's *ex parte* probate and requirements of published and posted notice of estate administration proceedings are constitutionally infirm because the notice provisions violate due process rights guaranteed under the fourteenth amendment. The fourteenth amendment protects property interest of interested parties [including heirs] by requiring that such parties receive adequate notice of probate and estate administration proceedings and an opportunity to be heard. The current Virginia probate and estate administration notice requirements invite due process challenges from interested parties to an estate or creditors who are known or ascertainable and do not receive notice by mail.

*Id.* at 1345 (footnotes omitted.)

Although West Virginia does not currently protect the property interest of heirs at law in *ex parte* probate proceedings by requiring notice, several states do. "[D]uring the last century many states amended probate notice requirements to abolish or modify *ex parte* probate and require constructive notice to interested parties before the hearing to prove the decedent's will." *Id.* at 1329. One such state is Oklahoma, whose probate code was before the United States Supreme Court in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). As described by the Court, "[u]nder Oklahoma's Probate Code,

any party interested in the estate may initiate probate proceedings by petitioning the court to have the will proved. The court is then required to set a hearing date on the petition, and to mail notice of the hearing 'to all heirs, legatees and devisees, at their places of residence.'" 485 U.S. at 480–81, 108 S.Ct. 1340 (internal citations omitted). The *Tulsa* Court cited its earlier decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), as having "established that state action affecting property must generally be accompanied by notification of that action[.]" *Id.* at 484, 108 S.Ct. 1340. In *Tulsa*, the Court observed that "when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Id.* at 486, 108 S.Ct. 1340.

The need for appropriate notice of probate proceedings to heirs was also discussed by the Ohio Supreme Court in *Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169, 512 N.E.2d 971 (1987). Therein, the court observed that:

> "the constitutionality of notice by publication to resident and nonresident heirs whose whereabouts are known to the applicant [seeking the probate of a will] is questionable under the doctrines announced in *Mullane* and its progeny. The continued adherence to 'constructive notice' where notice by mail provides 'an efficient and inexpensive means of communication' invites constitutional scrutiny. In response to *Mullane*, some states have acted to amend their statutes to require mailed notice of probate proceedings. The legislatures of other states have been urged by their courts and commentators to do likewise. The time appears ripe for this issue to receive the attention of the [Ohio] General Assembly."

512 N.E.2d at 977 (footnotes omitted.)

I believe significant due process issues are raised by West Virginia's current statutory probate scheme. In West Virginia, heirs at law do not receive notice of the delivery of a will to a commission clerk or of a motion to probate a will. I encourage the West Virginia Legislature to join those other states which have addressed this constitutional con-

cern and to consider amending our State's statutory *ex parte* probate law to provide for the notice arguably required by the Fourteenth Amendment of the United States Constitution and by Article 3, Section 10, of the Constitution of West Virginia, before another case such as the instant one arises.